JAMES H. BOSTWICK, Plaintiff and Respondent, v. THE MINNE-
    APOLIS & PACIFIC RAILWAY COMPANY, Defendant and Ap-
    pellant.

### Railroad Companies—Stock Killing—Negligence of Owner –Proximate Cause.

1. In this state the common law rule relative to domestic animals
is in force, and every man is bound, at his peril, to keep his stock upon
his own premises, and is liable. for all damages that his stock may
do on the premises of another, whether fenced or unfenced.

2. But the fact that plaintiff's horse was a trespasser upon the rail-
road track of defendant, without any actual fault of plaintiff, did not
relieve defendant, after the presence and peril of the horse were known
to it, from the obligation to exercise ordinary care in the management
of its trains to prevent an injury to the horse.

3. Where one party has been negligent, and a second party, know-
ing of such antecedent negligence, fails to use ordinary care to pre-
vent an injury which the antecedent negligence rendered possible, and
the injury follows by reason of such failure, the negligence of the sec-
ond party is the sole proximate cause of such injury.

(Opinion Filed Feb. 29, 1892.)

*A* PPEAL from district court, Richland county; Hon. W.
        S. LAUDER, Judge.

*Newman & Resser*, for appellant.    *McCumber & Bogart*, for
respondent.

Action by James H. Bostwick against the Minneapolis &
Pacific Railway Company to recover damages for an injury to a
horse.    Verdict and judgment for plaintiff.    From an order re-
fusing a new trial defendant appeals.    Affirmed.

Newman & Resser, for appellant:

The horse was a trespasser at the time at which, and the
place where the accident occurred.    Railroad Co. v. Munger, 5
Denio 265; Robinson v. Railroad Co., 44 N. W. Rep. 779;
Neiemann v. Railroad Co., 44 N. W. Rep. 1049; Railroad Co. v.
Kerr, 26 N. E. Rep. 316; Railroad Co. v. Kerr, 12 S. W. Rep.
329; Palmer v. Railroad Co., 33 N. W. Rep. 707; Railroad Co.
v. Godfrey, 71 Ill. 500.    The plaintiff is not entitled to recover

except for willful injury to the horse by defendant. Patterson's Railroad Accident Law, § 199; Van Horn v. Railroad Co., 18 N. W. Rep. 679; Harlan v. Railroad Co., 64 Mo. 480; Darling v. Railroad Co., 121 Mass. 118; Railroad Co. v. Waterson, 4 Ohio St. 424; Bush v. Brainard, 1 Cow. 78; Wright v. Railroad Co., 2 Amer. & Eng. R. Cases, 121; Leary v. Railroad Co., 3 Id 498; Railroad Co. v. Brunson, 19 Id 42; Railroad Co. v. Howard's Ad., 19 Id 98; Schittenhelms v. Railroad Co., 19 Id 111; Railroad Co. v. Hetherington, 83 Ill. 510; Maynard v. Railroad Co., 115 Mass. 458; Volkman v. Railroad Co., 37 N. W. Rep. 731. The rule stated is the general rule and is the rule in a large majority of the states. Patterson's Railway Accident Law, § 204; Palmer v. Railroad Co., 33 N. W. Rep. 731; Scheffler v. Railroad Co., 21 N. W. Rep. 711. The fact that plaintiff's horse escaped from his barn and was wrongfully on the highway, of itself as a question of law, establishes his negligence and would be a bar to a recovery even if defendant had been guilty of negligence. Hance v. Railroad Co., 26 N. Y. 428. The defendant was not guilty of negligence, as it was not bound to keep a lookout for animals wrongfully at large. McAllister v. Railroad Co., 19 Amer. & Eng. R. Cases, 108; Railroad Co. v. Graham, 12 Id 77; Railroad Co. v. Richards, 12 Id 70; Locke v. Railroad Co., 15 Minn. 297. It was not bound to ring its bell at the crossing, for there is no statute requiring it, and if there was defendent did not owe such duty to a trespasser. Harty v. Railroad Co., 42 N. Y. 468; Rosenberg v. Railroad Co., 15 Amer. & Eng. R. Cases 448; Elwood v. Railroad Co., 4 Hun. 808. Defendant was not bound to stop its train. Railroad Co. v. Champ, 75 Ill. 577; Edson v. Railroad Co., 40 Iowa 47; Railroad Co. v. Ganote, 13 Amer. & Eng. R. Cases, 519; Railroad Co. v. Wren, 43 Ill. 77; Railroad Co. v. Bradfield, 63 Ill. 220.

McCumber & Bogart, for respondent:

The question of what facts constitute negligence, or want of ordinary care, is one for the jury. Railroad Co. v. Doggett, 7 So. Rep. 278; Kent v. Railroad Co., 7 So. Rep. 391; Railroad Co. v. Watson, 7 So. Rep. 813; Railroad Co. v. Nash, 24 N. E. Rep. 884; Hanna v. Railroad Co. 21 N. E. Rep. 903; Railroad Co. v.

Gedney, 24 Pac. Rep. 464; Railroad Co. v. Gunn, 8 So. Rep. 648. Even where the facts are undisputed, and different minds might draw different conclusions from the evidence, it is a question for the jury.    Lasky v. Railroad Co., 22 Atl. Rep. 367; Williams v. Railroad Co., 14 N. W. Rep. 97; Railroad Co. v. Chambliss, 15 S. W. Rep. 469.

The opinion of the court was delivered by

BARTHOLOMEW, J.    We quote from the statement of facts in appellant's brief.    "The action was brought in justice court to recover damages alleged to have been done to plaintiff's horse by a passenger train of the defendant.  Plaintiff recovered, and on appeal the cause was tried *de novo* in the district court, and a verdict rendered for plaintiff.    A motion for new trial was made and overruled, and defendant appealed from the order refusing a new trial.    The material allegations of plaintiff's complaint are the fourth and fifth paragraphs, and are as follows: 'That on said last mentioned day plaintiff's said horse casually, and without the fault of the said plaintiff, at the station of Fairmount, in said county and territory, strayed in and upon the right of way of said railroad company; that said company, by its agents, servants, and employes, so negligently and carelessly handled and run its said cars that the same was, at said time and place, run into and over the said horse.'  The facts, as shown by the testimony, are as follows:    That at the time in question the defendant was running its regular passenger train on schedule time from Fairmount west.   The train was in charge of an experienced engineer, who had been running on the road nearly three years.   The engine was equipped with all the modern appliances for safety that were at that time in use upon passenger engines, and they were all in good order.   The train consisted of the engine and two cars, and was not at any time run at more than the ordinary speed of twenty miles an hour.   At and before the time of the accident the engineer was at his position on the right-hand side of the engine, and the fireman on the left-hand side, keeping a lookout.   It was necessary for the engineer to remain on the right-hand side of the engine, and the duty of the fireman to keep a lookout on the left.

The country is level prairie, and there was no obstruction to the view from the train along the highway. Plaintiff's house and barn were upon the south side of the track (left hand side of the train), about half a mile east of the place of the accident, and about ten rods from defendant's track, and the same distance west from the track of C., M. & St. P. R. R., which crosses defendant's track at right angles. About half a mile west of this crossing and of plaintiff's barn is the sleigh crossing at which the accident occurred. Plaintiff's horse was in this barn. Plaintiff's servant went to the barn to water the horse, and opened the door and went in. The horse slipped his halter, and ran out, and finally ran onto the public highway, which runs for half a mile parallel to defendant's track, about four rods distant therefrom, and then turns at right angles and crosses the track. The horse ran along this highway west towards the crossing, and plaintiff's servant followed him up as fast as he could. The snow was deep and there was no other track through it than that of the public highway mentioned. When defendant's train started up, after stopping at the C., M. & St. P. R. R. crossing, the horse was on the highway about one-fourth the way from the Milwaukee crossing, going west 'at a pretty good jog.' Defendant's train increased its speed until, at the whistling post, it was running about twenty miles per hour. At this whistling post, eighty rods east of the sleigh crossing where the accident occurred, the engine gave the whistling signal required by the rules of the company. The horse was then fifteen or twenty rods ahead of the train. About fifty or sixty rods east of the sleigh crossing the engineer first saw the horse." We quote now from the engineer's testimony on his direct examination when first put upon the stand: "When I saw the horse I put the air on to stop the engine. I set the air brakes. The engine slowed down materially at that time; came almost to a standstill. I directed the fireman to keep a lookout for the horse, to notify me of its movements. When we got nearly to the track the fireman said, 'George, he is moving towards us.' I put the air on again." It should perhaps be stated that respondent's evidence tended to show that no effort whatever was made to stop the train until about the moment of

the accident.    The snow was deep, and the traveled track had become raised somewhat by snow repeatedly blowing upon it, and for this cause the snow was unusually deep on either side of the track.    This general condition was known to the engineer, and also the fact that no track led from the traveled way before it crossed the railroad track.    The horse had one of its forefeet cut off.    The foot was found between the rails.    The horse, thus maimed, was on the south side of the track as the train passed it.    From this statement of facts the jury were warranted in reaching the conclusion that defendant's servants did not use ordinary care in their efforts to stop the train after the horse was seen by them, and before reaching the highway crossing. If respondent's testimony was true, they used no efforts.    If the engineer's testimony was true, it shows that he might easily have stopped the train some distance before reaching the crossing.    He says when he first saw the horse he set the air brakes, and brought the train almost to a standstill;  that he then directed the fireman to watch the horse and report his movements;  that, when they had almost reached the crossing, at a warning from the fireman he "put on the air again."    It is clear that, from the time he directed the fireman to watch the horse until he received the warning, he did nothing to stop the train, but, on the contrary, was pulling it ahead.    True, he subsequently testified that he did all that could be done to stop the train, but the jury had a right to take his first statement.

At the time the horse was first seen by defendant's servants, did they understand, or ought they to have understood, that the horse was in peril?    The engineer says he did not consider the horse in danger.    But that was not the test.    Were the circumstances, as known to him, such as would have induced the belief in the mind of a man of ordinary prudence that the horse was in danger?    Shear. & R. Neg. § 99;  Washington v. Railroad Co., 17 W. Va. 190.    When the train was at the whistling-post, eighty rods east of the highway crossing, and running twenty miles an hour, the horse was in the parallel highway fifteen or twenty rods ahead of the train.    When the train had passed the whistling-post twenty or thirty rods the engineer saw the horse.    Certainly the horse could not have gained any upon

the train, and, at most, could not have been more than twenty rods ahead of the train at that time. He was on the traveled track, deep snow on either side, running in fright from the train. If he left the traveled track it would be to go into deep snow, where he could not run, and if he continued upon the traveled track he must inevitably cross the railroad track a very short distance ahead. If train and horse reached the crossing at the same instant, injury to the horse must result. These conditions were known to the engineer. We think the jury warranted in believing that the engineer understood, or ought to have understood, the peril of the horse when he first saw it.

There are errors assigned upon the admission and rejection of certain testimony. None of these assignments raise any question of general interest. We have examined them, but find no prejudicial error.

It is also claimed that the evidence does not support the verdict in certain particulars. We have read the testimony with care, and think that, under the instructions, it has ample support. We will notice one point. It is claimed to be undisputed that the horse ran against the side of the engine, and that the engine did not run against the horse. Perhaps the point is not very material. The engineer swears to it positively. No witness supports him. Two of plaintiff's witnesses, while admitting that from their respective positions they could not be positive, yet they both thought that the horse reached the track ahead of the engine. If the engine moved suddenly and rapidly in front of the horse when he was so near the railroad track that he could neither stop nor turn, we are not able to see why appellant's liability should be different from what it would be if the horse reached the point of intersection an imperceptible instant ahead of the engine. But the engineer testified that the train stopped in the distance of about a car's length after the collision, and then pulled one or two hundred feet beyond the crossing; hence appellant argues that it is undisputed that the train must have been going quite slowly at the time, and that the defendant should no more be held responsible than if the horse had run against a standing engine or the last

car in a lengthy moving train. It is true no witness in terms swears that the train did not stop on the crossing, but two witnesses swore that the speed of the train was not diminished until the collision occurred. At the whistling-post the train was running twenty miles an hour. As men of ordinary judgment, the jury knew that a train running at that speed could not be stopped in a distance of sixty feet. The contradiction was direct in effect, though not in terms. It should be noticed, also, that the conductor of the train, a witness for defendant, testified that the train stopped one or two hundred feet west of the crossing, and mentions no earlier stop, and thinks the train could not have been running twenty miles an hour, because, if so, it could not have been stopped in 200 feet. That testimony indirectly contradicts the testimony of the engineer. In any event, the admitted fact that the horse's foot was cut off by a wheel of the engine, and left between the rails, sufficiently meets the allegation that the engine ran over the horse.

Section 5500, Comp. Laws, reads as follows: "All railroad corporations in this territory shall pay full damages to the owner or owners of horses and other stock and cattle that they may negligently and carelessly kill or damage by their cars, locomotives, agents, or employes, along said railroad or its branches, within the territory of Dakota." Section 5501 is as follows: "The killing or damaging of any horses, cattle, or other stock, by the cars or locomotive, along said railroad or branches, shall be *prima facie* evidence of carelessness and negligence of said corporation." Plaintiff introduced evidence to establish a *prima facie* case under the statute. At the close of this testimony defendant moved the court to direct a verdict, on the theory that the evidence introduced showed contributory negligence on the part of plaintiff of such a character as to defeat a recovery. The motion was denied, and this ruling was assigned as error. At the close of the entire testimony defendant again moved for verdict, urging contributory negligence of plaintiff, and the absence of any negligence on the part of defendant that would render it liable under the circumstances. This motion was denied also, and the ruling assigned as error. Defendant requesed the following instruction: "If the evidence introduced by de-

fendent shows the defendant guilty of no negligence or want of ordinary care, the *prima facie* case made by plaintiff in proving the injury to the horse in question by defendant's train is overcome, and you must find for the defendant unless the evidence introduced by plaintiff shows affirmatively that defendant or its employes were guilty of gross negligence in injuring the horse."

This was refused, and the following instruction given: "If, on the other hand, you shall find from all the evidence in the case that in the killing of this animal the persons in charge of the train at the time were guilty of negligence, that is, they did not exercise that care and prudence which a careful man should have exercised under the circumstances, and that the injury to the animal was the result of want of care on the part of those who had the train in charge, then your verdict must be for the plaintiff for the value of the animal and interest from the time of the injury." The giving of this instruction and the failure to give the one requested are assigned as error. It will be noticed that these assignments involve the same questions raised by the motions for verdict, and the several assignments may profitably be considered together. Two more points are involved, to-wit, the contributory negligence of plaintiff and the degree of negligence necessary to charge defendant with liability. The discussion of the case took a somewhat wider range than it will be necessary for us to take in deciding it. In this state cattle are not free commoners. The common-law rule is in force, and every man is bound, at his peril, to keep his stock upon his own premises, and is liable for all damage done by such stock upon the lands of another, whether fenced or unfenced. Comp. Laws, § 5569. We have no statute requiring railroad companies to fence their tracks. Railroad companies are entitled to the exclusive use of their right of way at the points of intersection with public highways, except as against persons and animals upon the highways for the purposes of legitimate passage. The horse escaped from plaintiff's barn by accident. Plaintiff's servant made immediate pursuit, but before the horse was retaken the injury occurred. The learned counsel for appellant claims that, notwithstanding such fresh pursuit, the horse was a trespasser. It is admitted that had the

horse been lawfully upon the highway in charge of plaintiff or his servant, and accidentally escaped from control, and such fresh pursuit had been made, he would not then have been a trespasser. But it is claimed that the rule is different where the animal escapes from the owner's premises onto the highway. The point is technical, and without deciding it we will assume that the horse was trespassing. We will admit also, without deciding, that defendant owed no duty to this plaintiff to be on the lookout for trespassing animals, and that as to such animals it owed no duty to sound the whistle or ring the bell or slacken the speed of its train upon approaching a public crossing, unless such trespassing animal had been seen by the persons operating the train, and its peril was, or under the circumstances should have been, known by them. Nor would it then be the duty of the defendant to sound the whistle or ring the bell if such signals would be as likely to increase as to diminish the peril of the animal, nor to slacken the speed of the train, if to do so would endanger the safety of the passengers upon the train.

It is urged that the presense of the horse upon defendant's right of way, of itself and as a matter of law, establishes contributory negligence upon the part of plaintiff of such a character as to defeat a recovery; and the case of Hance v. Railroad Co., 26 N. Y. 428, is cited to sustain the point. Other cases might have been cited. Of the case from New York, Mr. Beach, in his work on Contributory Negligence, at page 241, says: It "stands alone in the New York Reports. The rule in that state is clearly the reverse of this." The rule, however, in that state, as we understand it, is based upon a statute requiring railroad companies to fence their right of way. The negligence chargeable to plaintiff is not actual. It is such negligence as exists irrespective of the means by which the animal becomes a trespasser. Plaintiff may have been overpowered and bound hand and foot, and his barn door broken down, and his horse turned into the highway to stray upon defendant's right of way; yet none the less the horse would have been a trespasser, and plaintiff chargeable with that negligence which arises from the mere presence of the animal upon the premises of another, and

which the law must impute to him before it can logically hold him liable for the damage that may be committed by his animal while thus trespassing. The difficult point in the case is to determine what duties devolve upon defendant, admitting that the animal was a trespasser and admitting the negligence of the owner necessarily involved in such trespass.

It is urged upon us with much earnestness and great learning that, under such circumstances, the defendant is liable for willful or wanton conduct or gross negligence. There are many cases which seem to sustain this contention. See Railroad Co. v. Munger, 5 Denio 255, affirmed in 4 N. Y. 349; Van Horn v. Railroad Co., 59 Iowa 33, 12 N. W. Rep. 752; Eames v. Railroad Co., 98 Mass. 560; Darling v. Railroad Co., 121 Mass. 118; Wright v. Railroad Co., 2 Amer. & Eng. R. Cas. 121; Railway Co. v. Stuart, 71 Ind. 500; Shittenhelms v. Railroad Co., 19 Amer. & Eng. R. Cas. 111: Maynard v. Railroad Co., 115 Mass. 458; Railroad Co. v. Stanley (Ind.), 27 N. E. Rep. 316; Bennett v. Railway Co., 19 Wis. 158; Vandegrift v. Rediker, 22 N. J. Law 189. In some of these cases the injury was to persons while trespassers, and in others to animals while trespassers. Possibly there is an inclination to adopt somewhat broader grounds of liability, where the injury is to the person instead of property, but the same general doctrines are announced in all of the cases. A careful perusal of these cases fails to discover any discussion of the duties of the defendants after the peril to the trespassing person or animal was known. In the leading case in 5 Denio, which was an action to revover the value of certain oxen killed by a train, it appeared that the oxen were trespassers, and were lying down upon the track at night. After they were seen all reasonable efforts were made to stop the train, but it could not be done in time to avoid the injury. The negligence alleged was the speed of the train, insufficiency of the headlight and the failure to see the oxen sooner. And in all of these cases—or all to which our attention has been called—it will be found that the negligence upon which a recovery was sought was a failure to see the trespassing person or animals as soon as he or they might have been seen, or a failure to give some signal at a crossing or curve that the law directed should

be given, or running a train at a high rate of speed, or some act
of a kindred nature that had no reference to any known obstruc-
tion or danger.     And in these cases the courts have quite uni-
formly held, particularly where cattle were not free commoners,
that, as the defendant railroad company was under no obligations
to anticipate the presence of trespassers upon its track, so it was
under no obligation to maintain a watch for such trespassers or
to do any act looking to their protection.   The language used in
some of the cases, notably the New York cases, is broad, and it is
stated, without exception or qualification, that, in case of injury
to trespassers, there can be no recovery except for the willful or
wanton conduct or gross negligence of the defendant; and yet it
is apparent at a glance that an entirely different principle is in-
volved when it ceases to be a matter of anticipating trespassers,
and their actual presence and peril are known and understood.
Another fact will be found to be quite generally present in the
above class of cases, and that is that the plaintiff was in actual
fault, was guilty of actual negligence, by some act of commission
or omission, from which the injury complained of might reason-
ably be expected to follow.   But in this case, as appears from the
statement of facts, plaintiff was chargeable with no actual fault or
negligence.  The trespass was purely technical, and the trespassing
animal was seen by the servants of the defendant, and its peril
appreciated in ample time to avoid the injury by the exercise of
ordinary care and diligence.   Under these circumstances we do
not think the harsh rule of law that we have been considering
applies.    Gross negligence is briefly defined as the absence of
slight care.   It is that course of conduct which indicates an in-
difference to consequences.   If it be for that only that a defend-
ant can be held liable in a case of this kind, then human life
and the rights of property have reached a lower valuation than
can be found in any other branch of the law.    It was well said
in one of the cases that no more in law than in morals can two
wrongs make one right.   Trespassers, particularly mere techni-
cal trespassers, have some rights that must be respected.   That
they are trespassers does not constitute them outlaws, and if
seen, and their peril known, they may not ruthlessly be run
down and killed where ordinary care—such care as any prudent

man would exercise under the circumstances—would avoid such result. The contrary rule wounds every humane feeling in man's nature; it is opposed to the great golden rule and cannot be sanctioned by reason. We do not think it is, or ever was, the law. Negligence and contributory negligence must not be confounded. Negligence is contributory when, and only when, it directly and proximately induces the injury, in whole or in part. Where the negligent acts of two parties concur in producing an injury, neither being able in the exercise of ordinary care to avoid the consequences of the negligence of the other after it is known, neither is liable to the other. But where one party has been negligent, and a second party, knowing of such antecedent negligence, fails to use ordinary care to prevent an injury which the antecedent negligence rendered possible, and the injury follows by reason of such failure, the negligence of the second party is the sole proximate cause of the injury.

In the case of Isbell v. Railroad Co., 27 Conn. 393, the action was brought to recover the value of cattle killed by defendant's train, and by reason of negligence in its management. The cattle were trespassers, but plaintiff was guilty of no actual wrong or negligence. The case does not disclose whether the cattle were seen or not, and in that respect was weaker than the case at bar. The position of defendant in that case was identical with the position of this defendant, and is thus stated by the court: "The defendants say that, because the cattle were there, it puts the plaintiff, of necessity, in the wrong in the eye of the law, and works a forfeiture of the right to demand the exercise of care on the part of the defendants in running their trains of cars, even though from the want of such care the cattle should be run over and killed." The court in argument say: "A remote fault in one party does not, of course, dispense with care in the other. It may even make it more necessary and important if thereby a calamitous injury can be avoided, or an unavoidable calamity essentially mitigated. Common justice and common humanity, to say nothing of law, demand this; and it is no answer for the neglect of it to say that the complainant was first in the wrong, since inattention and accidents are to a greater or less extent incident to human

affairs.   Preventive remedies must therefore always be propor-
tioned to the case in its peculiar circumstances—to the immi-
nency of the danger, the evil to be avoided, and the means at
hand of avoiding it.  And herein is no novel or strange doctrine
of the law; it is as old as the moral law itself, and is laid down
in the earliest books on jurisprudence."   The court exhaust-
ively reviews the authorities, and reaches the conclusion that,
notwithstanding the technical trespass, defendant was liable for
the injury caused by the negligent management of the train;
and that, before the negligence of the plaintiff can preclude
his right to recover, it must be a proximate, and not a remote,
cause of the injury.

A more recent case is Needham v. Railroad Co., 37 Cal. 409.
In that case plaintiff's mare had trespassed upon defendant's
track.  In her efforts to escape a train she jumped into a bridge
over a dry run.   The train was stopped before reaching the
bridge, but the animal was injured in being removed by the
trainmen.   The court charged the jury:  " If the mare of plain-
tiff was injured by the want of ordinary care on the part of the
employes of defendant in removing her from the railroad, or by
reason of their negligence in doing so, the fact that she was
wrongfully upon the road does not protect the defendant from
liability," and refused to charge that defendant would be liable
only for gross negligence.   The trial court was fully sustained
on appeal.  This case is particularly valuable upon the question
of contributory negligence.  The court say, on page 419: "About
the general rule upon which it is founded—that a plaintiff can-
not recover for the negligence of defendant if his own want of
care or negligence has in any degree contributed to the result
complained of—there can be no dispute.  The reason of the
rule is that, both parties being at fault, there can be no appor-
tionment of the damages, and not that the negligence of plain-
tiff justifies or excuses the negligence of defendant.  *  *  *
The law does not justify or excuse the negligence of defendant.
It would, notwithstanding the negligence of plaintiff, hold the
defendant responsible if it could.   It merely allows him to
escape judgment because, from the nature of the case, it is
unable to ascertain what share of the damages is due to his

negligence.   He is both legally and morally to blame, but there is no standard by which the law can measure the consequences of his fault, and therefore, and therefore only, he is allowed to go free of judgment.   The impossibility of ascertaining in what degree his negligence contributed to the injury being then the sole ground of his exemption from liability, it follows that such exemption cannot be allowed when such impossibility does not exist; or, in other words, the general rule that a plaintiff who is himself at fault cannot recover is limited by the reason upon which it is founded."   Upon the main question, the principle decided is thus announced in the syllabus: "If the plaintiff is guilty of negligence, or even of possible wrong, in placing his animals on a railroad track, yet the railroad company are bound to exercise reasonable care and diligence in the use of their road, and, if for want of that care the animals are injured, the company is liable."   The law upon this point in this country is largely based upon the case of Davis v. Mann, 10 Mees. & W. 549.   In that case an ass was turned into the highway shackled, and was run over and killed.   A recovery was allowed, and Lord ABINGER, in reviewing the case, said: "Even if this ass was a trespasser, and the defendant might by proper care have avoided injuring the animal, and did not, he is liable for the consequences of his negligence, though the animal may have been improperly there."   The principle of that case has been well stated, as follows: "The party who last has a clear opportunity of avoiding the accident, notwithstanding the negligence of his opponent, is clearly responsible for it."   Shear. & R. Neg. § 99. "The mere fact that the plaintiff, when he suffered the injury, was technically trespassing upon defendant's premises, and would not have been injured if he had not so trespassed, is not, of itself, enough to convict him of contributory negligence." Shear. & R. Neg. § 97.   Again: "It is now perfectly well settled that the plaintiff may recover damages for an injury caused by the defendant's negligence, notwithstanding plaintiff's own negligence exposing him to the risk of injury, if such injury was proximately caused by defendant's omission, after becoming aware of plaintiff's danger, to use ordinary care for the purpose of avoiding injury to him.   We know of no court of last

resort in which this rule is any longer disputed." Id § 99.   In the note to Wright v. Railroad Co., 2 Amer. & Eng. R. Cas. 121, cited by appellant, the doctrine is recognized that "the fact that a person is a trespasser on the track does not absolve the company from preventing inflicting an injury upon him, if by the exercise of due care it could be avoided.   *   *   *   What is due care on the part of the company, under such circumstances, is necessarily a question of fact, and depends upon the circumstances of each case."   Citing Railroad Co. v. Riley, 47 Ill. 514; Stout v. Railroad Co., 2 Dill. 294; Railroad Co. v. Dignan, 56 Ill. 487; Finlayson v. Railroad Co., 1 Dill. 579.   Without extending this opinion by further quotations, we cite, in addition to cases already mentioned, and as supporting some or all of the propositions which we announce, the following cases: Railroad Co. v. Todd, 36 Ill. 409;   Railroad Co. v. Champ, 75 Ill. 577;   Railroad Co. v. Godfrey, 71 Ill. 500;   Palmer v. Railroad Co., 37 Minn. 223, 33 N. W. Rep. 707;   Locke v. Railroad Co., 15 Minn. 350 (Gil. 283;)   Witherell v. Railroad Co., 24 Minn. 410;   Scheffler v. Railroad Co., 32 Minn. 518, 12 N. W. Rep. 711;   Railroad Co. v. Kerr, 52 Ark. 162, 12 S. W. Rep. 329; Harlan v. Railroad Co., 64 Mo. 480, 65 Mo. 22;   Hicks v. Railroad Co. 64 Mo. 430;   Isabel v. Railroad Co., 60 Mo. 480;   McCarty v. Canal Co., 17 Hun. 74;   Harty v. Railroad Co., 42 N. Y. 472;   Kerwhacker v. Railroad Co., 3 Ohio St. 172;   Railroad Co. v. Lawrence, 13 Ohio St. 67;   Washington v. Railroad Co., 17 W. Va. 190;   Lawson v. Railroad Co., 57 Iowa 672;   Trow v. Railroad Co., 24 Vt. 494;   Laude v. Railroad Co., 33 Wis. 640; Railroad Co. v. Brown, 14 Kan. 469;   Railroad Co. v. Davis, 31 Kan. 645, 3 Pac. Rep. 301.   Section 3603, Comp. Laws, reads as follows:   "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. The extent of liability in such cases is defined by the title on compensatory relief."   We fully agree with appellant that this does not abrogate the common-law rule as to contributory negligence.   It but declares and confirms that rule as recognized

and explained in the foregoing cases. But under that statute and the decisions it is clear that the assignments of error which we have been considering are not well taken. It is urged that the instructions did not limit the time in which ordinary care was incumbent upon defendant to the time after the animal was seen. That could not be error in this case. The testimony was all directed to the conduct of defendant's employes after the horse was seen..

The appellant segregates and assigns error upon the following words in the charge: "The plaintiff in the case offered further proof, over and beyond the presumption of law, showing negligence on the part of the company and those in its employ." This language is unfortunate, and the instructions would have been better without it. It is one of those oversights which are well-nigh inseperable from the haste of jury trial. Immediately following this language the court said: "Now, you are instructed that the liability of this defendant, if it is liable in this case, depends entirely upon its negligence. It is not liable simply because it may have killed the horse; and if you find that in killing this animal the railroad company was not negligent—was not guilty—or, rather, did not fail to exercise that care and prudence which a prudent man would under the circumstances, then your verdict must be for defendant. If, on the other hand, you shall find from all the evidence in the case that in the killing of this animal the persons in charge of the train at the time were guilty of negligence, that is, they did not exercise that care and prudence which a careful man should have exercised under the circumstances, and that the injury to the animal was the result of want of care on the part of those who had the train in charge, then," etc. Read with the context, we are clear that the court had no thought of passing upon the weight of testimony, but simply meant that the plaintiff introduced further testimony for the purpose of showing negligence, and we think the jury must have so understood it. We are not inclined to relax in the least the rule that makes the jurors the sole arbiters of the facts, yet, in a case where it is so apparent as in this that exact justice has been done, we are not warranted in reversing the case for a mere oversight of

the trial judge which we are clear in no manner prejudiced the appellant. The judgment of the district court is affirmed. All concur.