HOUSKA, Appellant, v. HRABE, Respondent.

(151 N. W. 1021.)

(File No. 3678.   Opinion filed April 6, 1915.)

1. **Trespassing Animals—Evidence—Propensity of Horses to Quarrel—Judicial Notice.**

   The court should take judicial notice of the natural propensity of horses, and especially young horses, to play and fight each other, and to strike at each other, while standing on opposite sides of a fence, and their owners are charged with notice thereof.

2. **Trespassing Animals—Evidence—Injury From Wire Fence—Proximate Cause—Remoteness of Injury—Statutory Fence—Directing Verdict.**

   Where plaintiff, a horse raiser, built a barbed wire fence several feet within the boundary line upon his own land, and a previous tenant of the land occupied by defendant had built a fence within the line of the land occupied by him, so that the two fences were ten or fifteen feet apart, and an alley lay between them, the fences being built for the purpose of preventing horses grazing in the adjoining fields from getting out, each party maintaining the fence on the land occupied by him, which purpose defendant knew, and he kept up his portion of the double fence for over a year, but thereafter took it down and permitted his portion thereof to remain down and out of repair, so that horses kept by him could and did enter the lane and trespass upon plaintiff's land by plaintiff's fence, and, while said horses and plaintiff's horses were playing and fighting with each other over plaintiff's fence, which was a lawful fence under Laws 1907, Ch. 244, which statute is declarative of the common law, one of plaintiff's horses became entangled in the wire of the fence and was injured, **held,** that the presence of defendant's horses on the opposite side of the fence was the proximate and efficient cause of the accident and injury; that the injury was not too remote; that defendant must be held to have anticipated that some injury to his or plaintiff's horses, or both, was likely to happen, and he is responsible for the act which did happen because of trespass of his animals, and he was liable for the injury; and trial court erred in directing

verdict for defendant. Loiseau v. Arp, 21 S. D. 566, disapproved.

Appeal from Circuit Court, Brule County. Hon. FRANK B. SMITH, Judge.

Action by Joseph Houska against John Hrabe, to recover damages for injury to plaintiff's horse. From a judgment for defendant, and from an order denying a new trial, Plaintiff appeals. Reversed, and a new trial granted.

*House & Dyer*, for Appellant.

*Woerth & Carlson*, for Respondent.

(2) Under point two of the opinion, Appellant cited: Sec. 817, Code Civ. Procedure; Bestwick v. Minneapolis R. R. Co., 51 N. W. 781; Keith v. Tilford, 12 Neb. 271; Van Leuven v. Lake, 1 N. Y. 515, 49 Am. Dec. 346; Louisville Railway Co. v. Melton, 23 L. R. A. (N. S.) 183; Note to Tonawanda R. R. Co. v. Munger, 49 Am. Dec. 248; Decker v. Gammon, 44 Me. 322, 69 Am. Dec. 99; 13 Cyc. 27; Stockwell v. Reids Estate, 136 N. W. 476; McKeevers v. Homestake Mining Co., 10 S. D. 599.

GATES, J. Action for damages to plaintiff's two year old mare colt. The complaint alleged:

"1. That plaintiff is the owner and occupant of the west half of section 25 in township 103 north, of range 70 west of the 5th P. M., in Brule county, S. D., and maintains a horse and cattle pasture along the east side of said tract and along a certain double fence hereinafter referred to.

"2. That the defendant is the owner and occupant of the east half of the said section 25, and at times grazes and causes horses to be grazed along the west side of the premises occupied by the defendant along the double fence hereinafter referred to.

"3. That horses generally are liable to become injured by quarreling over partition fences if same are used in common between two pastures, and by nature and disposition are liable to and do quarrel over fences if permitted to run in adjoining fields, which fact was and is generally known by persons engaged in farming and stock raising and was at all times herein mentioned well known to the defendant.

"4. That the plaintiff and the last prior occupant of the east half of said section before defendant, constructed and maintained a double fence along the quarter line north and south between the field and pasture hereinbefore referred to, by each constructing·

a fence about 10 or 15 feet apart, and several feet back from the quarter line on each side, so that an alley or lane was left between said fields several feet wide for the purpose of preventing the horses grazing in said field and pasture from getting out, each party severally maintaining the fence on the land occupied by them.

"5 That the defendant well knew the purpose of and for which said double fence was built and maintained, and after moving upon and occupying said premises, to-wit, the east half of said section, continued to keep and maintain his portion of said double fence, to-wit, the east line of said fence, for more than a year.

"6. That thereafter, and during the winter of 1911 and 1912 and the spring of 1912 the defendant took down and permitted his portion of the said fence to remain down and out of repair, so that horses kept by him, the said defendant, and on his premises, could and did enter the lane between the two fences, and wrongfully and carelessly permitted such horses to enter upon said land and upon land of the plaintiff, and to come to and along the fence of this plaintiff on the west side of said lane, while the horses of the plaintiff were being kept in his, the said plaintiff's, pasture aforesaid.

"7. That the horses of plaintiff, and particularly one certain two year old mare colt of plaintiff, was by the horses kept by defendant and wrongfully permitted to be in and upon the same land and upon the land of plaintiff, attracted, led, and brought to the said fence along the west side of said land, and thereby became caught, entrapped in the wire fence on the west side of said line, by reason of the horses biting, fighting, and striking over the said fence.

"8. That the said two year old mare of plaintiff, by being so attracted, caught, and entrapped as aforesaid, was cut and injured wrongfully and without the fault of plaintiff, to the damage of plaintiff in the sum of $100."

The answer was a general denial. The evidence offered on behalf of plaintiff tended to support all of the allegations of the complaint. At the conclusion of plaintiff's evidence, the defendant moved for a directed verdict upon the following grounds:

"1. That the plaintiff has failed to establish that the defend-

ant was the owner of or had any interest in the horses which it is complained caused the injury to this colt.

"2. That the plaintiff has failed to prove a cause of action against the defendant, and if any damage was sustained by reason of the defendant's colts near the plaintiff's fence the damage was too remote to entitle plaintiff to recover in this action."

This motion was granted. From the judgment entered upon such directed verdict, and from an order denying a new trial, plaintiff appeals.

At the time of the accident the defendant's horses were in the lane and on the plaintiff's land. Plaintiff's fence at that point was 8½ feet inside his boundary line. The plaintiff testified as follows in regard to the accident:

"My fence was between his horses and my horses; at that time they were playing right over my fence; all at once I saw one of my mare colts jerking and trying to get out of the wire, and she jerked at it a moment or so, and she got loose—she couldn't walk and that scared the other horses away, so I could just see her there. I went up there as quickly as I could get up there, and saw she was cut bad."

Upon cross-examination he testified:

"When I observed the horse playing and fighting over the fence, I was working in the field about 60 rods away. My horses were fighting with Mr. Hrabe's horses, playing together, or fighting. Mr. Hrabe's horses were fighting with my horses. I didn't see anybody else. All at once I saw one of my mare colts jerk and try to get loose; she was jerking with her body and she was in with her left foot; she had her left foot in the wire. There were three wires in the fence, and she was jerking when I saw her. She jerked the wire off from 11 posts."

As to the natural propensities of horses in that situation the plaintiff testified:

"Q. Now you may state what you know as to the disposition of horses. A. I know they generally fight together, and they will paw, and if there is only one division fence they will get cut. My occupation is a farmer and stock raiser for about 15 years, and I am acquainted with the disposition and characteristics of horses. Q. Now you have stated that horses are by nature liable to play over a wire fence and quarrel and strike, you may state

whether this is a characteristic of horses generally, or just your particular horses. A. It is general; take young horses especially."

Upon the same subject Mr. Wodraska testified:

"I am acquainted with the disposition of horses, and their general propensities, and know what their dispositions are with reference to quarrelling or fighting over a partition fence between two fields; they tease each other and bite and play until they start to kick, and they paw before they turn around, and I suppose that is the way it happened; that is the disposition of all horses."

[1, 2] There is in reality but one question for us to determine, and that is the proximate cause of the injury. ·The defendant's horses were trespassers on plaintiff's land, and, if they were the proximate cause·of the injury, the defendant was liable, under the provisions of chapter 244, Laws 1907, which act is merely declaratory of the common law. Bostwick v. M. & P. Ry. Co., 2 N. D. 440, 51 N. W. 781. The substance of that act, so far as we are concerned therewith, has been the law of this jurisdiction since 1877.

If the division fence had been exactly upon the boundary line, and the defendant's horses had kept all portions of their bodies within the boundary line of defendant's land, it is clear that there would have been no liability on defendant's part. It would have been a case of damnum absque injuria. It would have been a case exactly similar in principle to Johanson v. Howells, 55 Minn. 61, 56 N. W. 460. In Ellis v. Loftus Iron Co., L. R. 10 C. P. 10, he defendant was held liable for injury to plaintiff's horse, caused by a kick of defendant's horse through the line fence. But here the horses of both parties were upon plaintiff's land, fighting and playing over a fence upon plaintiff's land. It is not claimed that defendant's horses were vicious, but that all of the horses were engaged in a general frolic, each at times probably reaching over the fence. As a result the plaintiff's colt became entangled in the lower wire of the fence and cut her left front foot.

The controlling causes of the accident were the trespass of the defendant's horses, the barbed wire fence, and the natural propensities of horses. It is clear that, if either of these causes

were absent, the accident would not have occurred.    The natural propensities of horses alone are not a sufficient cause of the accident.    These propensities are alleged and proven, and were shown by the evidence to be known to the defendant.    But, even in the absence of such pleading and proof, we think the court should take judicial notice of such natural propensities and that defendant would be charged with notice thereof.    The barbed wire fence, although a contributing cause, was a lawful fence, pursuant to chapter 197, Laws 1909.    Hence we must come to the proposition that the presence of the defendant's horses on the opposite side of the fence from plaintiff's horses was the proximate and efficient cause of the accident.

This view brings us in conflict with the conclusion arrived at in Loiseau v. Arp, 21 S. D. 566, 114 N. W. 701, 14 L. R. A. (N. S.) 855, 130 Am. St. Rep. 741.    In the note to that case in 14 L. R. A. (N. S.) 855, the author cites the case of Johanson v. Howells, supra, and says that case—

"is on all fours with the above case.    No other cases have been found upon the liability of the owner of an animal permitted to run at large for injury to other animals in adjoining fields, due to its mere presence and in the absence of trespass."

An examination of the Minnesota case discloses that in the opinion the Minnesota court twice emphasized the fact that the defendant's horses were not trespassers, while in the case of Loiseau v. Arp, supra, this court assumed for the purpose of the decision that Loiseau's horses were trespassers.    We are of the opinion that the result arrived at in that case was wrong, if Loiseau's horses were trespassers.    It is to be noticed that no evidence appears to have been offered as to the natural propensities of horses in such situation, as was done in the present case, nor was the question of taking judicial notice thereof considered in the opinion.    The evidence in that case, as disclosed in the opinion, showed:

"I heard the horses squealing and fighting, and looked up and saw those colts fighting with mine.    I hurried over and saw they were fighting over the fence.    The plaintiff's colts came against mine, biting and fighting, and mine got into the wire, raised up his front foot, and got caught in the wire, and was completely ruined.    When I started over there, I saw  *  *  *  that

they pushed the fence over and against my colt, and that mine, in fighting back, got onto the wires."

From the fact that upon the cross-examination of Arp it appeared that his horse caught its foot in the top wire of the fence this court asssumed that the horse was trying to jump the fence, and that such attempt was the proximate cause of the injury. Even if the court was right in that assumption, it is clear that such attempt was the natural and probable result of the presence of the other horses across the fence and of their actions. Their presence and activities there were the dominant cause of the action of Arp's horse, and therefore of the injury. In that case the court said:

"In the case at bar the injury resulting to defendant's colt could not have been anticipated by the plaintiff in permitting his colts to remain in the highway adjoining defendant's land."

We do not think that statement correctly expresses the rule. We think the rule is not whether the party could have anticipated the particular accident that happened. In the note to that case in 130 Am. St. Rep. on page 747, the author concisely states this rule, which is fully sustained by the authorities cited:

"The proximate cause of an injury is that which in a natural and continuous sequence, unbroken by any new independent cause, produces the injury, without which the injury would not have occurred. It is not necessary to show that the wrongdoer ought to have anticipated the particular injury which did result; it is sufficient to show that he ought to have anticipated that some injury was likely to result as the reasonable and natural consequence of his negligence."

See, also, 29 Cyc. 499.

It seems to us that the entanglement of the Arp horse in the fence and the entanglement of the present plaintiff's horse in the fence were not the result of "any new, independent cause," but that each was the result of the presence and activities of the other fellow's horses across the fence. We are of the opinion that in allowing his horses to get upon the plaintiff's land the defendant in the case at bar should have anticipated, and must be held to have anticipated, that some injury to his or plaintiff's horses, or both, was likely to happen, and therefore that he should he held responsible for the act which did happen because of the

trespass of his animals, it being a natural and reasonable result thereof.

The judgment and order appealed from are reversed, and a new trial granted.