**JACKSON COUNTY, S. D., v. DUFTY.**

No. 12952.

Circuit Court of Appeals, Eighth Circuit.

Feb. 19, 1945.

Rehearing Denied March 22, 1945.

Harold E. Covey, of Kadoka, S. D., and Charles H. Whiting, of Rapid City, S. D., for appellant.

H. F. Fellows, of Rapid City, S. D. (H. P. Gilchrist, of Kadoka, S. D., on the brief), for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

228

GARDNER, Circuit Judge.

This was an action brought by appellee, Hattie Dufty, as special administratrix of the estate of her deceased husband, Avery J. Dufty, against Jackson County, South Dakota, to recover damages for the death of her husband by wrongful act. The parties will be referred to as they were designated in the trial court.

It is alleged in the complaint that on the morning of September 25, 1943, plaintiff's intestate, Avery J. Dufty, was driving his automobile across a bridge on a road in Jackson County, South Dakota, south of the town of Cottonwood, the bridge being a part of the county highway system of said county; that the bridge was destroyed and out of repair to such an extent as to endanger public travel, it being old and deteriorated and the planks forming the floor rotted, rough and uneven, and about fifty feet of the guard rail at the north end of the west side of the bridge having been knocked down and destroyed, such a condition having continued for a long time prior to the date alleged; that when decedent's automobile came upon the bridge the tires broke through the floor, entered one of the holes in the floor of the bridge, causing him to lose control of the car and precipitating it from the bridge to the bottom of the creek bed below, causing his death. It was alleged that defendant had had notice of the unsafe condition of the bridge for a long time prior to the happening of the accident.

The defendant denied generally the allegations of the complaint except as to jurisdictional allegations, denied that it was under the duty of keeping the bridge in repair, denied that any negligence on its part relative to the maintenance or repair of said bridge was the proximate cause of plaintiff's intestate's death, and alleged affirmatively that said intestate had been guilty of contributory negligence.

On stipulation of the parties the action was tried to the court without a jury, resulting in findings of fact and conclusions of law in favor of plaintiff, fixing her damages at $10,000. From the judgment entered on these findings and conclusions defendant prosecutes this appeal, seeking reversal on the following grounds: (1) The bridge on which the accident occurred was not a bridge which it was the duty of the County Commissioners of Jackson County to maintain and keep in repair; (2) the failure, if any, of the governing body of Jackson County to maintain and keep in repair the bridge on which the accident occurred was not the proximate cause of the accident which resulted in the death of appellee's decedent; (3) appellee's decedent was guilty of contributory negligence.

■ It is admitted that in South Dakota a county can not be sued for damages for personal injuries except as expressly authorized by statute. Plaintiff bottoms her right of action and the liability of the defendant county upon certain statutory provisions. Section 28.0913, South Dakota Code 1939, provides as follows:

"In case any highway, culvert, or bridge shall become in whole or in part destroyed or out of repair by reason of floods, fires, or other cause to such an extent as to endanger the safety of public travel, it shall be the duty of the governing body or board under statutory duty to maintain such highway, culvert, or bridge upon receiving notice thereof to cause to be erected for the protection of travel and public safety, within twenty-four hours thereafter, substantial guards over such defect or across such highway of sufficient height, width, and strength to guard the public from accident or injury and to repair the same within a reasonable time thereafter. It shall also be the duty of such governing body or board to guard any abandoned public highway, culvert, or bridge in like manner.

"Any person who shall sustain injury to person or property by reason of any violation of this section shall have a cause of action against the county, township, city, or town as the case may be for such damages as he may have sustained."

Section 28.0312, South Dakota Code 1939, provides as follows: "It shall be the duty of the board of county commissioners to maintain properly and adequately the county highway system within the county by contract or day labor on all or different portions of the same as the board of county commissioners may deem most expedient, and to maintain any secondary highways according to any agreement made by it in consideration of federal aid received for construction and improvement of such highways."

Section 28.1402, South Dakota Code 1939, provides as follows: "The duty to

construct and maintain all bridges and culverts throughout the county, except upon the State Trunk Highway System, is hereby imposed upon the board of county commissioners, subject to sections relating to culverts on secondary highways in townships."

■ Section 28.1414, South Dakota Code 1939, provides that it shall be the duty of the county highway superintendent to make inspection of the existing bridges in the county "for any conditions affecting the life and safety of the bridge such as faulty design, neglect of maintenance" etc. He is required to make report to the board of county commissioners as to his inspection. Manifestly, if the bridge on which the accident occurred was not a part of the county highway system of Jackson County, it could not be held liable in this action. This is a mixed question of fact and law. The court found as a fact that the bridge was a part of the county highway system "which it was the statutory duty of such county to maintain."

By Chapter 107 of the South Dakota Session Laws of 1939, which became effective July 1, 1939, the state highway system as theretofore designated was perpetuated; hence, if the bridge in question was a part of the county highway system, and not a part of the state highway system, on that date, it continued to be such at the time of the accident, September 25, 1943, unless a change were made in the manner provided by statute. It is therefore important to determine the status of this bridge prior to July 1, 1939.

It is the claim of plaintiff that the bridge became a part of the county highway system either on May 2, 1939, through action of the Board of County Commissioners of Jackson County, or on June 27, 1939, through action of the State Highway Commission consummating the action taken by the Board of County Commissioners. The resolution adopted by the Board of County Commissioners of Jackson County on May 2, 1939, recites that the attached map and reference descriptions be and are proposed as the county highway system of Jackson County, South Dakota. The resolution provides for the giving of public notice of a hearing to be held upon the proposed highway system, and sets out a description of the highways to be included in the county highway system. The description includes the highway on which the bridge in question in this action is located. On June

6, 1939, the Board adopted the following resolution:

"Whereas, on May 2nd, 1939, this Board by resolution proposed a Highway System for Jackson County, South Dakota, and designated this day for a hearing on the said proposed County Highway System, and

"Whereas, it is deemed to the best interest of Jackson County, that a new designation of a County Highway System be made at this time.

"Therefore be it resolved, that the County Highway System proposed and described by a resolution of this Board adopted May 2nd, 1939 and described on a map and designated as Exhibit "A" and attested and sealed by the County Auditor of Jackson County, South Dakota, be, and the same is hereby declared to be the Highway System of Jackson County, South Dakota.

"Above resolution adopted this 6th day of June, 1939."

Thereafter, and on June 27, 1939, the South Dakota State Highway Commission adopted a resolution reciting:

"That, whereas, a resolution has been presented by the Board of County Commissioners of Jackson County, South Dakota, requesting certain changes in the County Highway System, as hereinafter described;

"And, whereas it appears that the said Board of County Commissioners has complied with all the regulations in regard to the proposed change, and the State Highway Commission being fully advised in the matter, now, therefore,

"Be it resolved by the State Highway Commission to abandon all of the present county Highway System as on record, and in its place designate a new County Highway System, described as follows: * * *" (Here follows description of Road No. 11, upon which is located the bridge in controversy in this action).

■ Section 28.0302, South Dakota Code 1939, provides that no county highway system shall be changed except by authority of and in accordance with a resolution of the State Highway Commission. There was introduced in evidence a map showing the county highway system of Jackson County, which included this road and bridge, and it was shown that this was the map filed in the office of the County Auditor and also in the office of the State

230

Highway Commission. There is no evidence in the record showing any change in this county highway system after July 1, 1939, nor, indeed, any change after June 27, 1939. There apparently was a change effected through the adoption of the resolutions by the county commissioners on May 2, 1939, and June 6, 1939, and by the adoption of the resolution by the State Highway Commission on June 27, 1939. With the adoption of the resolution by the State Highway Commission on June 27, 1939, the county highway system became re-established and the State Highway Commission relinquished to the county such duty as that body had theretofore had relative to maintaining the road and bridge here in controversy. We conclude that the court correctly found that the bridge was a part of the county highway system of Jackson County at the time plaintiff's intestate met his death.

The court, having determined that the bridge was a part of the county highway system of Jackson County, and that it was the statutory duty of the county commissioners of that county to maintain it, found that the county had been negligent in that it failed properly to perform this duty. The court specifically found that the bridge was destroyed and out of repair to such an extent as to endanger the safety of public travel; that it was old and deteriorated; that the planks forming its floor were rotted, thin, and contained holes; that two narrow plank treadways running lengthwise of the bridge had been placed upon the floor, which treadways had become so deteriorated and rotten that they contained holes; that the floor was so filled with holes that it was unsafe for the driving of a motor vehicle over it; that about fifty feet of the guard rail on the west side of the bridge at the north end had been destroyed and had never been replaced nor repaired; that a driver of an automobile crossing said bridge could not with safety drive along that portion of the floor of the bridge which was not covered with the plank treadway without the hazard and possibility of breaking through such floor, nor could he drive across said bridge on the plank treadways without the hazard and possibility of the wheels of his automobile dropping into the holes in the treadways, with consequent loss of control of his car, and that in the event of loss of control of his car the driver had no protection from being precipitated to the bottom of the creek eight or ten feet below the floor of the bridge because of the absence of the guard rail.

■■ The question of negligence is ordinarily a question of fact. The findings of the court are presumptively correct and should not be set aside on appeal "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The court having found the issues in favor of the plaintiff, we must assume that all conflicts in the evidence were resolved in favor of the plaintiff, and on appeal the evidence must be viewed in a light most favorable to the appellee.

Besides the oral testimony relative to the condition of this bridge, there were offered and received in evidence certain photographs which seem to reflect the physical condition of the structure and go far toward sustaining the court's findings. We attach three of these photographs marked for identification "Exhibit H," "Exhibit I," and "Exhibit L," respectively.

Exhibit H

Exhibit **I**                    Exhibit **L**

In Exhibit H, the camera faced north; in Exhibit I the camera faced north; while in Exhibit L it faced toward the southeast, showing the portion of the bridge from which the railing had been broken. The photographer who took these pictures testified that the hole in the floor of the bridge shown in Exhibit H was about sixty-five feet from the south approach of the bridge on the left hand side going north. He testified that this hole was there on the 25th of September, 1943; that farther toward the north end of the bridge there was another series of holes, shown in Exhibit I. He testified to other holes clear through the floor of the bridge; that the bridge was wavy down its whole length; that there were loose planks in the bridge; that the bridge is approximately 150 feet long; that Exhibit K showed the corner of the bridge where the car went off. The photographer had observed the bridge immediately following the accident, and in his testimony he described skidding marks on the floor of the bridge and testified that, "I could see where the car skidded off the bridge. That was at the place where the railing was gone."

J. Dufty, a brother of the deceased, called as a witness on behalf of the plaintiff, testified that he was in the automobile with his brother, Avery Dufty, at the time of the accident resulting in his brother's death; that they were proceeding north on the highway driving at a speed of between fifteen and twenty miles an hour; that the car was in good condition and his brother was an experienced driver; that they were both strangers in the vicinity of this bridge and had never driven over it before. In describing the manner of the accident he testified: "When we just got on the bridge, I could still see the steering wheel sort of turn to the right, like that. Then he throwed it back, and that is when the car started to skid, the hind wheels slipping off the plank. I mean the car gave a sudden jerk to the side; seemed to turn to the right and he swung it right back. The rear wheels went off of the plank on the right side; the front wheels must have went off on the left side because we kept getting a little more straight until the wheels got about so straight. By straight I mean cross ways. We kept getting more cross ways and all at once the hind wheels

grabbed. When the hind wheels grabbed I would say we was half way or better, better than half way I would say across the bridge. The car went off the bridge on the left side of the end toward Cottonwood. Immediately after the car had given this jerk the rear wheels of the car went off on the right hand side of this plank treadway. I would say that right after that the front wheels went off on the left side, but things was happening kind of fast. From that time on the car started to slant. I would not say it got almost straight across but far enough so the wheels took hold. Before we were clear off the bridge I think—in fact I am sure we struck the plank that stuck out and was used as a brace for the railing. At the end of the bridge the guard rail was completely gone on that side * * *. The car lit on the top with the wheels in the air. I would say the distance down was at least ten feet. The tires were not hurt a bit; there were no blow-outs."

He testified that after the accident and after the undertaker came he went back to inspect the bridge; that Exhibits H to O show the bridge and the floor of the bridge and the planks and the holes in the same condition they were the day of the accident; that he went back to the place where he felt the first lurch of the steering wheel and where the hind wheel went over to the right. At that point he found this hole in the bridge, the hole shown in Exhibit H. There were three other holes on the left side of the treadway. The witness also testified: "When I went back to the point where I found the holes on Exhibit H, I observed tire tracks. On each side of the planks it showed black where the rubber had gone. * * * They were close to the hole. I would say they started past it. I would say maybe three or four feet past it. It seems like the car did not slow up very much from the time we hit, until the wheel hit went kitty-corner. It seemed like it rode right along."

Mr. Bateman testified that he was a rural mail carrier and frequently drove over this route and was very familiar with the bridge. He had been county commissioner of Jackson County for a period of twelve years prior to December 31, 1934; that the guard rail on the west side of the north end of the bridge was broken at the time he had an accident in April, 1943; that one of the wheels of his car had hit this hole as shown in Exhibit H, and finally careened off to the side, taking the guard rail off, in the same manner as the Dufty car had gone; that the hole in the bridge floor shown on Exhibit H had been there for two years and had never been repaired, and that the three holes shown on Exhibit I were there at the time of his accident in April, 1943, and were also there at the time of the Dufty accident. He also testified:

"There are holes in the floor of the bridge; off of the treadway plank there is a place where you can see down between the planks. At the time of the Dufty accident the hole that is apparently patched on the right hand side of the treadway shown in Exhibit I was there and it was there at the time of my accident in April. * * * The bridge is all kind of wavy. It leans a little bit to one side which has a tendency to get a car to whipping and bouncing. The only portion of the bridge where the guard rail is gone is where I took it off. There have been quite a few accidents on the bridge before my accident. It is a one-way bridge.

"Following my accident I had a talk with the County Commissioners of Jackson County. * * * It was right after dinner that I had the talk with the County Commissioners in front of the grocery store. * * * I was still pretty hot under the collar, as the saying goes, after my wreck. I said, 'Don't you fellows know that there is going to be somebody killed on that bridge if something isn't done?' Well, they said, 'We don't know whether it is our bridge or not.' Well, I said, 'It looks to me like you would be finding out.' Before that I told them what had happened. I told them I had gone off the bridge and how it happened. I told them the large hole in the traffic lane was what caused my accident and I said it was going to cause more. * * * I told them I took the guard rail off and my car lay down in the gully about eight or ten feet. I told them where the hole was in the bridge was what caused my accident. * * * The hole in Exhibit H is the hole I told the County Commissioners caused my accident."

Speaking of the day of the Dufty accident, the witness said:

"Mr. Dufty and I got up on the bridge and examined the rubber that had been left in the traffic lane. I found rubber left on the plank. I mean skid marks.

"Q. Where did they start with reference to the hole on Exhibit H? A. Just after this hole was hit by the car wheels."

 There was other testimony as to the condition of the bridge, and we are clear that the finding of negligence is sustained by overwhelming testimony. The bridge was in an appalling condition and to one unfamiliar with it, it would seem to have been a veritable death trap. It is said that the County is not liable under the decision of the Supreme Court of South Dakota in Reaney v. Union County, 10 N.W. 2d 762, 764. The court in the course of its opinion in that case held that: "The broad general duty to maintain a reasonably safe highway has been eliminated, and the specific duty to guard and repair a damaged or destroyed highway has been retained."

The court also said: "These defects were inherent in the design or plan of the highway the county provided the public, and we conclude that the present statute does not afford plaintiff a remedy for injuries proximately caused thereby."

In the instant case we are not confronted with defects that were inherent in the design or plan. The defects here complained of were not structural. Here the structure had become destroyed and out of repair.

It is next urged by defendant that its negligence was not the proximate cause of the catastrophe resulting in the death of plaintiff's intestate. Liability for negligence depends upon proof that the injury suffered by plaintiff was caused by the alleged wrongful act or omission of defendant. Proximate cause is the primary moving cause which in natural sequence of events, and without intervention of any new or independent cause, produces injury. Joslin v. Linder, 26 S.D. 420, 128 N.W. 500; Houska v. Hrabe, 35 S.D. 269, 151 N.W. 1021, L.R.A.1915D, 1074; Chicago Great Western R. Co. v. Mackie, 8 Cir., 60 F.2d 384. The surrounding circumstances, the physical facts, and the oral testimony certainly tended to show that the accident was caused by the negligent failure of the defendant to discharge its duty to repair and restore the destroyed bridge, and under these facts and circumstances the court was warranted in finding that had the defendant performed that duty the accident could not have happened. Barger v. Chelpon, 60 S.D. 66, 243 N.W. 97. The question of proximate cause

is usually one of fact and the findings of the court here are conclusive on defendant on that issue.

Finally it is urged that the decedent was guilty of contributory negligence. This was an affirmative defense on which defendant had the burden of proof. It is usually a question of fact. The court on the evidence found that there was no contributory negligence, and this finding can not be disturbed as it is supported by abundant evidence.

The judgment appealed from is therefore affirmed.