DONALD McLEOD, Respondent, v. JOSEPH SIMON, The Consumers Home Oil Company of South Dakota, a Corporation, and The Standard Oil Company of Indiana, a Corporation, Defendants, The Consumers Home Oil Company of South Dakota, a Corporation, Appellant.

(200 N. W. 790.)

**Trial — effect of law relative to directing verdicts notwithstanding the evidence stated.**

1. The purpose and effect of chapter 133, Session Laws, 1921, providing "When at the close of the testimony any party to the action moves the court to direct a verdict in his favor, and the adverse party objects thereto, such motion shall be denied and the court shall submit to the jury such issue or issues, within the pleadings on which any evidence has been taken, as either or any party to the action shall request, but upon a subsequent motion, by such moving party after verdict rendered in such action, that judgment be entered notwithstanding the verdict, . . . the court shall grant the same if, upon the evidence as it stood at the time such motion to direct a verdict was made, the moving party was entitled to such directed verdict. . . ." is to defer a ruling by the court on the sufficiency of the evidence until after a verdict has been returned.

**Appeal and error — where sufficiency of evidence challenged by motion for directed verdict, new trial should be granted, where impossible to determine on which of two theories jury found.**

2. When the sufficiency of the evidence has been challenged by motion for directed verdict, a new trial should be granted on that ground where the cause is submitted to the jury on two distinct inconsistent theories and the evidence is sufficient to sustain it on one of those theories, but insufficient to sustain it on the other, and it is impossible to say on which theory the jury found, though no exception is taken to the instructions under which the cause is submitted.

**Sufficiency and insufficiency of evidence.**

3. Record examined and *held*, for reasons stated in the opinion, that the evidence, while sufficient to sustain the verdict on one of the two theories of fact on which the cause was submitted, is insufficient to sustain it on the other theory of fact.

Opinion filed September 13, 1924.

Appeal and Error, 3 C. J. § 641 p. 749 n. 36; § 906 p. 985 n. 34: 4 C. J. § 2556 p. 662 n. 91 New. Trial, 38 Cyc. p. 1564 n. 70; p. 1626 n. 69.

Appeal from the District Court of Cass County, *Englert,* J.

Action for damages. From a judgment in favor of the plaintiff and from an order denying its motion for judgment notwithstanding the verdict or for a new trial, the defendant, Home Oil Company, appeals.

Reversed and new trial ordered.

*A. L. Parsons,* and *Schneller & Heder,* for appellant.

Where a statement of facts appeared to have been made in writing by a witness many years before the trial, it was held that he might use it to refresh his memory if he recognized it as his handwriting, but, on his stating that he had no recollection of the facts themselves, it was held that the writing was not admissible in evidence. Calvert v. Fitzgerald, 16 Ky. 388.

To render admissible in evidence a memorandum which a witness knew to be correct when it was made, the witness must be able, after examining it, to state the fact from memory. Watts v. Sawyer, 55 N. W. 38.

The contents of a letter written to the plaintiff by a witness, and detailing a conversation with one of the defendants is not admissible in evidence, the witness being unable to swear to any of the facts from memory, though he is willing to swear to the truth of the letter from confidence in his own veracity. Redden v. Spruance, 4 Har. 265.

The fact that a memorandum was made by a witness while the facts were fresh in his memory, and that he then knew that the particulars contained therein were correctly stated, is not sufficient to authorize the substitution of the memorandum for the recollection of the witness. Clark v. State, 4 Ind. 156.

Though a statement of the fact made by a witness many years before the trial may be used to refresh his memory, it is not admissible in evidence if he has lost all recollection of the facts themselves. Calvert v. Fitzgerald, 16 Ky. 388.

On the trial of an indictment for selling oleomargarine colored to look like yellow butter where the evidence shown that the color was due to cotton-seed oil, it is proper to sustain an objection to the following question asked upon cross-examination of a witness: "And cotton-seed oil, as an ingredient, is recognized as a legitimate ingredient, is it not?" Such a question is not tantamount to asking a witness whether it is an essential ingredient, or one commonly used, but involves for its com-

plete answer a construction of the statute which it is not within the province of the witness to give. Com. v. Mellet, 27 Pa. Sup. Ct. 41.

It is error to permit a physician to interpret to the jury as showing no diseased condition the report of the autopsy surgeon. (Cal.) 209 Pac. 26, 26 A.L.R. 116.

A witness will not be permitted to intrude upon both the function of the judge and that of the jury by stating a conclusion of law. 17 Cyc. 219.

So a witness cannot state whether or not certain articles come within the inspection law. Com. v. Giltin, 64 Pa. 100.

That matters requiring special knowledge or skill are properly the subject of expert testimony about which experts may testify as to their opinion is conceded, but an expert cannot be permitted to express an opinion on the ultimate issue, to be determined by the jury. Eclipse Lumber Co. v. Davis (Iowa) 195 N. W. 337.

Testimony of a witness as to analysis of gasoline, which he has not tested nor seen tested, and whose only source of information is a written report from another whom he had directed to test the gasoline is hearsay and incompetent. Bell Oil & Gas Co. v. A. B. A. Ind. Oil, etc. Co. (Neb.) 195 N. W. 461.

*Lovell & Horner,* for respondent.

NUESSLE, J. This is an action for damages, claimed on account of the sale to the plaintiff and respondent of an unsafe and dangerous mixture of gasoline and kerosene for illuminating purposes.

From the record it appears that there is no question but that the plaintiff, McLeod, bought oil for illuminating purposes from the defendant, Simon, who kept a general store at Wheatland, N. D.; that he used the oil for such purposes; that on May 7, 1920, an explosion resulted from such use, causing a fire, and that the plaintiff was substantially damaged thereby. It further appears that Simon kept the oils that he had for sale in tanks in his store house. He had two such tanks, one painted red to contain gasoline of a capacity of from 160 to 290 gallons; the other painted grey to contain kerosene of a capacity of from 60 to 110 gallons. The Standard Oil Company, and the defendant, Home Oil Company, were engaged in the business of wholesaling gasoline and kerosene. They supplied their customers, one of whom

was the defendant, Simon, from their distributing stations by means of tank wagons. In 1919 and 1920, the Standard's agent and driver were first one Askew and, later, one Klein. The defendant, Home Oil Company began business in the month of March, 1920. Askew, formerly employed by the Standard, was appellant's agent and driver. These companies supplied Simon with his gasoline and kerosene. It appears that which ever company Simon happened to be doing business with had an understanding with him that when its tank came to Wheatland, the driver would fill Simon's containers without any further directions, present the tickets to the cashier and get the money therefor.

In the fall of 1919 Klein, who was delivering to Simon for the Standard, suggested that the kerosene tank was too small to hold the amount of oil that might be required, and, at Simon's direction, he filled the gasoline tank, as well as the kerosene tank, with kerosene. The date on which this was done does not clearly appear. Klein continued making deliveries as required throughout the winter. He made his last delivery on March 12th. It does not appear from the record, however, whether the commodity then delivered was kerosene or gasoline, or the quantity thereof, or in what container, or containers, it was put.

The defendant, Home Oil Company, began business in March, 1920. Simon liked Askew and arranged to buy from him. On March 23rd, Askew came to Simon's store house and without any particular direction from Simon filled the tanks therein according to the custom which had been followed with Simon. He put 75 gallons of kerosene in the grey tank and 30 gallons of gasoline in the red tank. He was paid therefor by Simon's cashier.

Askew's testimony is that immediately after filling the tanks, he learned from Simon's son that the oil in the red tank, at the time it was thus filled, was kerosene; that knowing the dangerous character of the mixture thus resulting for illuminating purposes, he, at once, advised Simon of the fact; that he suggested locking the tank, and that the mixture in the tank should be disposed of to the local electric light plant for use in its engine; that the tank was locked and a sale was at once made of one hundred gallons of the mixture to Powlinson, the owner of the electric plant and that Askew delivered the same using

his tank wagon for that purpose; that he made his next trip to Wheat-land on April 22nd; that at that time he learned that Simon was sell-ing the mixture in the red tank for illuminating purposes; that he again advised Simon that it was dangerous and unsafe for such use. He on this occasion delivered both kerosene and gasoline, 50 gallons of each,. to Simon. Simon procured a small red tank from Powlinson to contain the gasoline. Askew put nothing but kerosene in the grey tank. The defendant company made its next delivery to Simon on May 8th. Askew is corroborated by the testimony of Powlinson and by other evidence in the record.

Simon testifies that he had no knowledge of the fact of the mixture in the red tank prior to the fire; he admits that Askew told him of the mixture but testifies that this was at the time of the delivery on May 8th, after the fire; that only one sale was made to Powlinson and that was of 100 gallons, or thereabouts; it was made after the fire and the small tank was not obtained from Powlinson until after the fire. That the oil that he sold to McLeod was furnished to him by the defendant Oil Company; that Klein might have delivered for the Standard as late as March 12th; that he does not know how much either of kero-sene or gasoline he had on hand on March 23d, or how it was contained.

Harry Simon, the son of the defendant Simon, was also called as a witness. Harry testifies that he sometimes helped his father in the store; that he filled the can for McLeod at the time of the purchase; that it was filled from the grey tank.

There is no other testimony in the record as to the tank from which the oil purchased by McLeod came. After the fire a portion of the liquid thus purchased was analyzed by the State Oil Inspector and found not to comply with the legal requirements for illuminating oil and to be unsafe and dangerous as such. It does not appear, however, whether it was unsafe by reason of being a mixture of kerosene and gasoline, or whether it was unsafe and dangerous and did not comply with the legal requirements by reason of not being properly refined. In other words, the effect of the testimony of the chemist is simply that it was unsafe and dangerous for illuminating purposes and did not meet the requirements for illuminating oil as prescribed by chapter 185, Session Laws 1919.

The Statute, chapter 185, Session Laws 1919, prescribes the sort of

containers that must be used for gasoline and kerosene. It is made a misdemeanor to put, or keep, gasoline in any other than a red container, and, likewise, to put, or keep, kerosene in a red container. Simon had arranged to buy his oil from Askew. Askew in accordance with the arrangement and the practice followed went to the store house to deliver his wares. He put the oils thus delivered in the containers there provided. One was red, the other grey. He had the right to assume that the red tank contained gasoline, and so assuming, he was not negligent in not investigating before delivering gasoline therein, and, likewise, he had the right to assume that the grey tank contained kerosene, and there was no negligence in putting kerosene into that tank without investigating as to its contents. The plaintiff claims to recover on account of negligence on the part of Askew. How then could Askew be negligent? There were only two possible ways under the testimony; first, by putting gasoline, or kerosene that did not meet the legal test, into the grey tank, or, second, by failing to notify Simon of the dangerous character (as illuminating oil) of the mixture in the red tank, after he, Askew, learned of that fact and that Simon was selling the contents thereof for illuminating purposes, and for the purposes of this case, we assume that such failure would constitute negligence.

It is clear that the trial court took this view of the matter for, in submitting the case to the jury, he charged as follows: "Should you find that Simon purchased a mixture of kerosene and gasoline from the Consumers Home Oil Company, or that he had knowledge of such mixture having been placed in his tank, or tanks, by the Consumers Home Oil Company, if it did, and that the Company's agent, or servant, told Simon that it must not be sold for illuminating purposes, before Simon sold it to McLeod, if he did sell it to the plaintiff, then the defendant, Consumers Home Oil Company, would not be liable, and the defendant, Simon, would alone be liable, if you find the other facts that I have here mentioned to you have been established. Of course, if you find these facts to exist, and also find that the employee, or servant, of the Consumers Home Oil Company made no such statement to Simon, or did not in any way caution Simon against selling the mixture of gasoline and kerosene for illuminating purposes until after the sale thereof had been made to McLeod, the plaintiff herein, then both de-

fendants would be liable, if the plaintiff has established all the other facts necessary to entitle him to recover in this lawsuit."

No exception was taken to any portion of the charge. The jury returned a verdict in favor of the plaintiff and against both the defendant, Simon, and the Home Oil Company. The Home Oil Company moved for judgment notwithstanding the verdict or for a new trial. This motion was denied and judgment was entered on the verdict. The Standard Oil Company was also a party defendant, but the facts with reference to its transactions with Simon were not disclosed in the plaintiff's main case and when the plaintiff rested the court dismissed as against that company. This appeal is taken by the Home Oil Company from the judgment and from the order denying its alternative motion; Simon does not appeal.

The principal contention of the appellant is that the evidence is not sufficient to sustain the verdict. It appears to us that it may fairly be said that the case was submitted to the jury on two theories, in so far as the containers from which the oil came were concerned, that is, on the theories that the oil might have been sold to McLeod from the red tank or that it might have been sold from the grey tank, and the question as to which tank it came from was left to the determination of the jury. It is impossible to say from the verdict what the jury found in this respect. Appellant insists that the evidence is insufficient in any event. It concedes that Askew knew the mixture in the red tank was unsafe and dangerous, but insists that he so advised Simon and told him not to sell therefrom. Simon denies this. Appellant contends that as regards the red tank the only testimony in the record on which a verdict can be based under the law of the case as established by the charge, is that of Simon, and that testimony is so unsatisfactory that it is entitled to no credence. It is sufficient to say that while it is unsatisfactory nevertheless the jury were the judges of its weight and credibility, and it is not so unsatisfactory that we can say no reasonable and fair minded men might believe it. In this respect we must hold the evidence sufficient. See Erickson v. Wiper, 33 N. D. 193, 157 N. W. 592; Thompson v. Scott, 34 N. D. 503, 159 N. W. 21. Even so, urges the appellant, the only evidence in the record, other than the circumstances, as to the tank from which the oil in question was obtained is that of Harry Simon, who filled McLeod's can, and who was called

as a witness for the respondent in rebuttal. And that testimony is un-
equivocal that it was filled from the grey kerosene tank. Therefore,
urges the appellant, any liability on account of the mixture in the red
tank is negatived. We think, however, that the circumstances as dis-
closed by the record, were such that the jury well might have disre-
garded the testimony of Harry Simon and found from those circum-
stances alone that the sale was in fact made from the red tank. That
being so, the position of the appellant in this regard is not sustainable.
The appellant further urges that so far as the grey tank is concerned,
there is not sufficient evidence in the record to establish that appellant
was responsible for any dangerous mixture that might have been con-
tained therein. We think that there is merit to this contention. It is
true that Simon testified that the oil that was sold to McLeod was fur-
nished to him, Simon, by the appellant, but Simon admitted that Klein
might have delivered for the Standard as late as March 12th, and he
does not evidence any knowledge as to how much either of kerosene or
gasoline he had on hand on March 23rd, or how contained. Neither
did he, himself, make the sale to McLeod. So his testimony as to the
origin of the oil sold to McLeod was purely a conclusion. Askew's tes-
timony is that he put nothing but kerosene in the grey tank. The rec-
ord establishes that the Standard Company had supplied Simon with
oil up to and including the 12th of March. The custom was to fill the
tanks when a delivery was made. It is in no way shown how much
had been sold from the grey tank prior to the time when the appellant
began its deliveries, nor how much of the old supply remained on hand
therein at that time. It does not even appear definitely what the capac-
ity of the grey tank was. It is true that so far as the record shows, but
one explosion occurred from the use of the oil sold by Simon, and that
was after the delivery by the appellant; but there was only one explo-
sion, and it is as easy and as reasonable to infer—and it is only possible
to infer—that the contents in the grey tank were contaminated by the
prior deliveries of the Standard as by the subsequent deliveries by ap-
pellant. So it appears to us that the record will not sustain a finding
that the appellant was responsible for any unsafe and dangerous mix-
ture that was contained in the grey tank at the time of the sale to Mc-
Leod, and it follows that if the verdict was based upon a finding by the
jury of the sale from the grey tank that it cannot stand.

We are thus confronted with the question as to whether, when the sufficiency of the evidence generally has been challenged by motion for directed verdict, a new trial should be granted on that ground, where the cause is submitted to the jury on two distinct theories and the evidence is sufficient to sustain it on one of those theories, but insufficient to sustain it on the other, and it is impossible to say on which theory the jury found, and no exception is taken to the instructions under which the case is submitted. Chapter 133, Session Laws 1921, provides: "When at the close of the testimony any party to the action moves the court to direct a verdict in his favor and the adverse party objects thereto, such motion shall be denied and the court shall submit to the jury such issue or issues, within the pleadings on which any evidence has been taken, as either or any party to the action shall request, but upon a subsequent motion, by such moving party after verdict rendered in such action, that judgment be entered notwithstanding the verdict . . . the court shall grant the same if, upon the evidence as it stood at the time such motion to direct a verdict was made, the moving party was entitled to such directed verdict. . . ."

The plain purpose of this statute is to defer a ruling by the court on the sufficiency of the evidence until after a verdict has been returned. To attain that purpose it is the duty of the court to submit the cause to the jury on such of the various theories presented by the pleadings and on which any evidence has been offered as shall be requested by any party to the action. In the instant case the plaintiff sought a recovery as well on the theory that the sale of the oil in question was made from the grey tank as on the theory that it was made from the red tank. At the very close of the case he recalled the witness, Harry Simon, for the single apparent purpose of showing that the sale was made from the grey tank. Plaintiff's contention as stated in his brief is consistent with that theory, and his argument before this court was to the same effect. The court in that portion of the instructions heretofore quoted, clearly submitted the case on the theory that there might have been a sale to McLeod from either tank. It is true no express request was made by the plaintiff that the issues be thus presented to the jury. But it must be noted that when, at the close of the testimony, the appellant made its motion for a directed verdict on the ground of the insufficiency of the evidence, the court in denying the motion said:

"I will deny each of the motions and will submit the matter to the jury with the request that any of the aggrieved parties make a motion before this court for either judgment notwithstanding the verdict or for a new trial, as the case may be, before an appeal is taken to the Supreme Court."

The court thus plainly indicated that his ruling was made in view of the statute. See Rokusek v. National Union F. Ins. Co. 50 N. D. 123, 195 N. W. 300. The plaintiff made no objection. It seems to us that this acquiescence on the part of the plaintiff was tantamount to a request to submit the issues made by him and we must so hold.

Under the Statute, chap. 133, supra, the court had no option but was required to deny the motion for a directed verdict. By such motion the defendant challenged the sufficiency of the evidence to warrant a verdict against him. Necessarily, if his motion meant anything it directed that challenge to any and every possible theory on which the case might be submitted. The effect of such motion was to thereby raise a question of law and such question was reviewable upon appeal from the judgment, provided that the defendant acceded to the court's request and moved for judgment notwithstanding the verdict or for a new trial. See Rokusek v. National Union F. Ins. Co. supra. It is impossible to say on which theory of the case the jury returned the verdict complained of. As we have shown, it cannot be sustained on one theory. Had there been a special finding indicating that the jury returned its verdict on the theory that the sale was made to McLeod from the grey tank there is no question but that the motion for judgment notwithstanding should have been granted. By reason of this uncertainty we are of the opinion that the defendant is entitled to a new trial. Otherwise, the remedies that he was entitled to by virtue of his motion are unavailable. The judgment must therefore be reversed and a new trial granted.

Bronson, Ch. J., and Christianson, Birdzell, and Johnson, JJ., concur.