[File No. 6871.]

ELMER SMITH, Respondent, v. NORTZ LUMBER COMPANY, a Corporation, Appellant.

(7 NW(2d) 435.)

Opinion filed January 8, 1943. Rehearing denied January 26, 1943.

*J. E. Hendrickson* and *Clifford Schneller,* for appellant.
*Forbes & Forbes,* for respondent.

BURR, J.   On March 24, 1941, the defendant, as the owner of certain land in Richland county, entered into the customary cropper's contract with the plaintiff, the contract to terminate October 15, of that year.   The plaintiff was to furnish seed, labor, and machinery, seed the land as directed by the owner and the owner was to give him a certain portion of the crops—the title of the crops remaining in defendant until division.   Possession by the plaintiff was contemplated by the

very nature of the contract, and the contract was such as created the relationship of landlord and tenant. Minneapolis Iron Store Co. v. Branum, 36 ND 355, 371, 162 NW 543, LRA1917E 298.

Plaintiff, in his complaint, sets forth that the "defendant failed, neglected, and refused to allow or permit plaintiff to enter upon or take possession of any part of said real estate under said Farm Contract and plaintiff was prevented by the defendant from entering upon said real estate and from taking possession of the same for any purpose whatever;" and that by this act of defendant he was damaged, setting forth various items of damage which are not necessary to mention.

The defendant admits the contract, but denies refusal of possession and "that it ever in any manner whatsoever prevented the plaintiff from taking possession of said farm lands or any part thereof."

The case was submitted to a jury. A motion for directed verdict was denied. The jury returned a verdict for the plaintiff. A motion for judgment notwithstanding the verdict or for a new trial was overruled. Judgment was entered for the plaintiff and the defendant appeals.

Several specifications of error are set forth but we need consider only the alleged error of the court in refusing to grant the motion for judgment notwithstanding the verdict.

The record shows without dispute that the defendant was the owner of the land and had good title to it. Plaintiff went into possession of the land in April and began the farming operations. He moved the necessary machinery onto the land; but after seeding a few acres one George Snyder came upon the land and by threats caused the plaintiff to desist. Plaintiff immediately notified the defendant of this interference with his possession, and also on the other occasions mentioned later. The upshot was the plaintiff, because of the threats and intimidations of Snyder, did not farm the land and received no benefit from his lease.

The record shows without question that Snyder had no legal title to the land or any interest therein at the time the lease was entered into or at any time thereafter during the progress of this case. He was not living on the land nor did he have possession. The record shows

that at one time Snyder had owned the land, had lost it on foreclosure proceedings and at the time the contract was entered into all his interest had terminated. Snyder made several abortive attempts, during the year 1941, to set aside the judgment holding he had no interest therein, but these efforts failed. Some of these efforts were made during the period that plaintiff had this lease.

There is no claim of lack of good faith on the part of the defendant in entering into the contract, nor is there any claim that the defendant incited, encouraged or in any way was responsible for the actions of Snyder—in fact the record shows that the acts of Snyder spurred the defendant to maintain its rights and demonstrate Snyder's lack of title to or interest in the land.

For the plaintiff to maintain his action, under the facts in this case, it is necessary for him to show that he was evicted. He admits he went into possession of the land and began his farming operations. On the day he took possession Snyder interfered with him and interfered with several later attempts on the part of plaintiff to farm the land. But the eviction was not caused by any wrongful act on the part of the defendant. It was caused by a third person and not under any title paramount to that of the defendant.

The action is one for damages and while the complaint alleges the defendant would not allow the plaintiff to enter upon the land (which allegation is erroneous) the real theory of the complaint is that it was the duty of the defendant to protect the possession of the plaintiff and failing to do so, and failing to curb George Snyder, the defendant was at fault and should respond in damages.

Section 6081 of the Compiled Laws provides: "An agreement to let upon hire binds the letter to secure to the hirer the quiet possession of the thing hired during the term of the hiring against *all persons lawfully claiming the same.*"

This statute defines the duty defendant owed the plaintiff. The expression, "lawfully claiming the same" means that the one claiming has a legal right to the use or possession of the property. See Agouro v. Lewis, 15 Cal App 71, 76, 113 P 882, 884. The California supreme court construes an identical statute, in McDowell v. Hyman, 117 Cal 67, 70, 48 P 984, 986, and quotes this doctrine with approval: " 'The

principal covenant on the part of a landlord, which, if not expressed, is implied, is that his tenant shall have the quiet enjoyment and possession of the premises during the continuance of the term.

" 'This covenant, whether expressed or implied, means that the tenant shall not be evicted or disturbed by the lessor or by persons deriving title from him, or by virtue of a title paramount to his, and implies no warranty against the acts of strangers.' "

The rule is well set forth in 2 Tiffany on Landlord & Tenant, 1301. "Except in the case of an eviction by title paramount, there is . . . no eviction, in the legal sense of the term, when the tenant's possession or enjoyment is interfered with by a third person not acting by the landlord's authority or with his consent." This is approved in Baltimore v. Latrobe, 101 Md 621, 639, 61 A 203, 209, 4 Ann Cas 1005. "An eviction must be predicated upon the wrongful act of the landlord, or those acting with his permission, . . . the landlord need not guard the tenant against wrongful acts of third persons." Lawrence v. Rappaport, 213 Mich 358, 181 NW 1011. See also Blomberg v. Evans, 194 NC 113, 116, 138 SE 593, 594, 53 ALR 686; Taber v. Van Pelt, 149 NYS 487.

For the plaintiff to recover he must show therefore that the defendant, or someone by its connivance put him out of possession.

There being no actual eviction by the landlord it became necessary for the plaintiff to show that this eviction by Snyder was brought about by the agency or procurement of the landlord. See Gribbie v. Toms, 70 NJL 522, 524, 57 A 144, 145.

The plaintiff's testimony shows that shortly after he began his farming operations Snyder came over to the land and ordered him off, stating "the best thing for you to do is to get off and stay off." Plaintiff then interviewed the president of the company and told him that Snyder was seeding the land and the president told him, "Well, let him go ahead and seed" and the more he seeded the less Smith would have to do.

Again plaintiff attempted to put in a crop and Snyder again ordered him off. Again he went to see the landlord and was advised to stay off for three days, that a notice would be served on Snyder to keep away. Again plaintiff attempted to farm and Snyder drove in ahead of his tractor and stopped him and told him if he did not get out of

there, there would be trouble. Again he interviewed the president of the company and was told there was nothing he could do. Plaintiff says that Mr. Nortz, the president of the company, asked him why he did not go and protect his rights, why he did not go ahead with the farming, "You could go out to the farm hit him if nothing else, fight with him, knock the dickens out of him" and to this Smith replied that he had a life to live too. He states that thereafter the president said, "Well stay off then until the next court session is up." Smith testified that on two or three occasions he was advised by Nortz to wait a little while until the proceedings that Smith had brought would be settled.

There is a sharp conflict in the evidence on this phase. But this is the testimony of the plaintiff; and on a motion for judgment notwithstanding the verdict we accept the view most favorable to appellee. Hager v. Minneapolis, St. P. & S. Ste. M. R. Co. 53 ND 452, 206 NW 702.

The plaintiff admits he made no attempt whatever to interfere with Snyder and his actions, other than to complain to the defendant. He consulted no lawyer to protect his rights except on one occasion, and what he said or did is not shown. He took no legal proceedings against Snyder, nor in any way did he take issue with him. There is nothing in the record to show—in fact the record contradicts the theory—that he made any attempt to get possession of the grain that Snyder raised, or to prevent Snyder from cutting or threshing the crop that was planted. The only testimony he gave as to any attempt on his own part to protect his rights was that every time he was ordered off he drove into town to consult the defendant, summing it up by saying, "I went up there to the land and tried my best to put in the crop, and I was ordered off, and I let Nortz know about it so the grain would be put in."

There is nothing in the contract to the effect that the defendant was guaranteeing quiet and peaceful possession of the land against any person in the world. Neither is there anything to show that anyone having any title or interest in the land interfered with the plaintiff. The hostile acts were those of a third party totally unconnected with the defendant.

The very best possible construction which can be placed upon the

words and acts of the defendant, as related by the plaintiff is advice and, to some extent, an offer of assistance. To charge the defendant with liability in this case there must be shown to be an intentional ex- clusion of the lessee by the defendant; (Gorfinkle v. Abrams, 263 Mass 569, 570, 161 NE 795), and these acts must show "a clear indication of intention on landlord's part that tenant shall no longer continue to hold the premises." Schnitzer v. Lanzara, 115 NJL 332, 180 A 234, 236.

In the recent case of Donald v. Faulds, 302 Mich 331, 4 NW (2d) 676, it is held, the fact that the plaintiff had moved onto a farm with the consent of the owner and finally left the farm at request of the farm owner did not constitute an eviction by the owner.

Clearly the plaintiff has no cause of action against the defendant. There is nothing to indicate that the actions of Snyder were in some way aided or abetted by the defendant or caused by its procurement, agency or connivance; and the record contradicts the idea that any ad- ditional testimony can be produced to show this. This being so the motion for judgment notwithstanding the verdict should have been granted. The judgment is reversed and the action dismissed.

MORRIS, Ch. J., and NUESSLE, BURKE, and CHRISTIANSON, JJ., concur.