Henry H. SCHMITT and Sophia Schmitt, Harry L. Kent and Ann Kent, and Harry S. Stevens and Albina R. Stevens, Plaintiffs and Respondents,

v.

NORTHERN IMPROVEMENT COMPANY, Defendant and Appellant.

No. 7985.

Supreme Court of North Dakota.

June 11, 1962.

Jansonius, Fleck, Smith, Mather & Strutz, Bismarck, for defendant and appellant.

Rausch & Chapman, Bismarck, for plaintiffs and respondents.

TEIGEN, Judge.

Henry H. and Sophia Schmitt, Harry L. and Ann Kent, and Harry S. and Albina R. Stevens, joined in one action as plaintiffs asserting the right to relief severally upon a claimed right arising out of the same occurrence against the defendant, Northern Improvement Company. The action was instituted to recover damages to the plaintiffs' respective homes alleged to have been caused by the negligent breaking of street pavement adjacent to their respective lots. The case was tried to a jury and separate verdicts were returned in favor of the plaintiffs in the amounts of $2,160 for the Schmitts, $2,550 for the Kents and $2,870 for the Stevenses. Judgment was entered accordingly.

During the course of the trial, the defendant moved for a dismissal of the action and for a directed verdict in favor of the defendant upon the grounds that the plaintiffs had wholly failed to prove negligence and that there was no proof that the alleged operations of the defendant were a proximate cause of damage, if any, sustained by the plaintiffs. The motions were denied. After the verdicts, the defendant moved for judgment non obstante or, in the alternative, for a new trial. This motion was denied and the defendant has appealed from the order denying the motion and from the judgment.

The specifications of error relate first, to the sufficiency of the evidence; second, to the court's refusal to permit the jury to view the premises; and third, to the rejection of evidence. We shall first consider the first specification that the verdict is contrary to the evidence.

In the spring of 1959, the defendant began work pursuant to a contract with the North Dakota State Highway Department to relocate U. S. Highway #10 from Washington Street west to Memorial Bridge in the City of Bismarck, North Dakota. The work required the removal of about 700 feet of old concrete highway located 95 feet to 132 feet behind the homes of the plaintiffs. It also required the driving of piling to support the new roadbed in the same area. The old concrete highway was broken by the use of a headache ball (a 2,200 pound weight) which was alternately hoisted and dropped by a crane on the old pavement breaking the concrete into pieces for easy removal. The piling was driven by a 3,800 pound weight alternately hoisted and dropped by a crane within a guide liner on to the ends of the pile. Both operations caused vibrations or shock waves. Each of the plaintiffs testified that they observed these operations from windows in their homes or from the back of their yards. They all testified they felt severe vibrations when the headache ball was dropped on the concrete pavement. The vibrations caused dishes to rattle in the cupboards, refrigerators and on stoves, and pictures to turn on the wall. They testified they could feel the vibrations and that cracks developed in the plaster, the outside stucco and the foundations of their homes. The concrete floor in the corner of a basement settled and the outside steps of a house gave away. Doors in some cases started to bind and had to be trimmed. All of the plaintiffs testified the vibrations from the dropping of the headache ball were severe but that the vibrations from the pile driving operation were either slight or were not felt at all. All of the plaintiffs clearly dis-

tinguished the two types of operation in plain, understandable laymen's language.

The old concrete highway was broken and removed in a period of two or three days with the headache ball being used half days, whereas the pile driving operation consumed about ten days. The trial was held more than two years after the work was completed. The plaintiffs were not in agreement as to the length of time the damaging operation was in effect, nor were they clear or consistent as to the month or the period of the month in which the work was done, but their testimony as to the damages and the feeling of the vibrations relate to the time when the work with the headache ball was actually done and no other time.

Shortly after the demolition work commenced, defendant's superintendent, who was directing the work, received complaint of vibrations in the vicinity of the plaintiffs' homes. He went to complainant's home located between the homes of two of the plaintiffs and made an investigation. He testified he felt slight vibrations when the headache ball was dropped on to the pavement. A vice president and director of the defendant company testified he received complaints to the same effect, which emanated from the same home. The use of the headache ball was nevertheless continued. It was dropped on to the pavement about once every ten seconds from a height of about ten feet, except when the crane was moved, and would shatter about 36 square feet of pavement with each drop of the ball.

The project engineer for the State highway department testified there were several ways in which concrete of this type could be broken, such as the use of a hydrahammer or a jackhammer, but the fastest and cheapest way was the use of the headache ball. One difference between the use of the headache ball and the pile driver in its effect upon the surrounding area is the manner in which the energy is consumed. He testified the blow to the pile would have a confined effect for the reason that much of the energy transmitted to the piling is lost in friction as the piling goes through the ground and less energy is distributed in the form of shock waves through the ground; that piling is a yielding object and the jarring effect is less than from a similar blow upon a nonyielding object. He classified pavement as a nonyielding object. In the use of the jackhammer there is less jarring than in the use of the headache ball but it is most commonly used in small areas as a pavement breaker.

The project engineer also testified that previous to the commencement of the pavement breaking operations, tests were made to determine the nature of the underground formations and it was determined that there existed a noticeable gully which centers on the park and swimming pool area located east of the row of houses in which the plaintiffs' houses are located; that the vein of sand continued across the project area and because of it piling was necessary to support the retaining walls of the new highway. This fine sand was water bearing and this type of underground formation, he testified, would cause shock waves to be transmitted quite readily. The defendant company had knowledge of this underground formation. It necessitated the driving of the piling.

The project engineer for the State highway department accompanied the defendant's superintendent in the examination of the home of the complainant. He also testified vibrations could be felt in the home when the headache ball was dropped on to the pavement and that it caused the cap of a sink attached to the basement wall to rattle. He testified the complaint was received when the work was somewhat less than one-half finished but more than one-fourth finished.

The defendant's contract with the State highway department by a subsequent change order provided for the driving of test piling. It also appears a second change order, also made a part of the contract,

must have been entered into for the purpose of driving the balance of the piling. Specifications of the State highway department provided the manner in which the pilings were to be driven. The specifications, however, do not provide for the manner or the method of breaking up the old pavement.

The record contains considerable evidence of vibrations caused by the use of a headache ball being felt in the homes of the plaintiffs. There is very little evidence that vibrations set up by the pile driving operations were felt in the area. The only evidence adduced on this question came from the plaintiffs themselves and was to the effect that very little or no vibrations could be felt from that operation. One plaintiff testified vibrations from pile driving operations did not amount to more than 10% of the vibrations felt from the use of the headache ball. The defendant produced no evidence that vibrations transmitted by the pile driving operations could be felt in the area of the plaintiffs' homes, except that adduced on cross-examination of the plaintiffs which was to the effect, as previously stated, that they were minor or nonexistent.

Upon this evidence the defendant contends there was a failure of proof of negligence on the part of the defendant and that the jury reasonably could not find that the negligence alleged proximately caused the damage claimed because the cause of damage could be as reasonably attributed to an act (pile driving) for which the defendant is not liable. Plaintiff did not allege the pile driving operation was negligently performed.

The plaintiffs have the burden of proving that defendant was responsible for some negligent act and that such act was the cause of their injury. Farmers Home Mutual Insurance Co. v. Grand Forks Implement Co., 79 N.D. 177, 55 N.W.2d 315; 38 Am.Jur., Negligence, Sec. 285, 65 C.J.S. Negligence §§ 208–209.

Ordinarily negligence and proximate cause are questions of fact for the jury. They become questions of law only when the evidence is such that ordinarily intelligent, reasonable and fair-minded men, in the exercise of reason and judgment, can reasonably draw only one conclusion; but if the evidence is such that ordinarily intelligent, reasonable and fair-minded men, in the exercise of reason and judgment, may reasonably draw different conclusions from the evidence and circumstances, as to the facts or the deductions to be drawn from the facts, then they are questions of fact for the jury. McCullagh v. Fortune, 76 N.D. 669, 38 N.W.2d 771; Maloney v. City of Grand Forks, 73 N.D. 445, 15 N.W. 2d 769; Leonard v. North Dakota Cooperative Wool Marketing Association, 72 N.D. 310, 6 N.W.2d 576; Logan v. Schjeldahl, 66 N.D. 152, 262 N.W. 463; Newton v. Gretter, 60 N.D. 635, 236 N.W. 254; Dougherty v. Davis, 48 N.D. 883, 187 N.W. 616; McGregor v. Great Northern Railway Company, 31 N.D. 471, 154 N.W. 261, Ann.Cases 1917E, 141.

Upon a review of an order denying a motion for judgment notwithstanding the verdict, the question is whether the party making the motion was entitled to a directed verdict at the time the motion for a directed verdict was made. Upon consideration of such question, this court must review the evidence in the light most favorable to the opposing party. Mischel v. Vogel (N.D.), 96 N.W.2d 233; Knudsen v. Arendt, 79 N.D. 316, 56 N.W.2d 340; Glaserud v. Hoff, 75 N.D. 311, 27 N.W.2d 305; Kohler v. Stephens, 74 N.D. 655, 24 N.W.2d 64; Bormann v. Beckman, 73 N. D. 720, 19 N.W.2d 455; Smith v. Nortz Lumber Co., 72 N.D. 353, 7 N.W.2d 435.

A motion for judgment notwithstanding the verdict admits the truth of the evidence given by the party against whom the verdict is asked to be directed, and also admits inferences and conclusions which can reasonably be deduced from such evidence. Mischel v. Vogel, supra; Schantz v. Northern Pacific Rwy. Co., 42 N.D. 377, 173 N.W. 556.

We are agreed that under the evidence in this case, it cannot be said that ordinarily intelligent, reasonable and fair-minded men could draw only the conclusion that the action of the defendant, in continuing the use of the headache ball after it received complaints of vibrations felt in the vicinity of plaintiffs' homes and made cursory examination without any follow-up or change in procedure, did not constitute negligence. Or that such men, after considering and weighing the evidence, could only reach the conclusion that such negligence did not constitute the proximate cause of the injuries sustained by these plaintiffs.

The defendant argues that the possibility of vibrations being transmitted, as a result of the pile driving operation, is an equally rational theory of proximate cause with that alleged by the plaintiff and supports the plaintiff. It bolsters its argument by referring to the testimony of the project engineer for the State highway department wherein he testified, in effect, that he did not believe it would be possible for him to make a statement that would be meaningful, in regard to the effect of vibrations set up by the dropping of the headache ball, without making a comparison between that type of blow and the type of blow directed to a pile and that to determine the comparison, it might require an experimental approach. However, outside of this theoretical approach which was negative, there is no evidence in the record to indicate vibrations caused by the pile driving operation were felt in any substantial degree in the area of the plaintiffs' homes. Whereas, there is evidence that the vibrations set up by the dropping of the headache ball were substantial.

A theory of proximate cause resting in probative circumstances does not become a matter of speculation and conjecture by mere suggestion of other possible causes which are unsupported by any proven facts. National Lead Co. v. Schuft, 8 Cir., 176 F.2d 610, cer.den. 338 U.S. 871, 70 S.Ct. 149, 94 L.Ed. 534; Klein v. W. Hodgman & Sons, Inc., 77 S.D. 64, 85 N.W.2d 289.

We feel that the evidence as to proximate cause presents a question of fact. It presents a reasonable inference of the alleged cause of injury and excludes other equally reasonable inferences of other causes. The proof is therefore sufficient to take the case to the jury. Farmers Home Mutual Insurance Co. v. Grand Forks Implement Co., supra; 65 C.J.S. Negligence § 244.

The plaintiff is not required to establish with certainty the proximate cause of his injury and it is sufficient if the proof shows that of various possible causes shown by the evidence, the one for which the defendant was responsible was the most probable. Burt v. Lake Region Flying Service, 78 N. D. 928, 54 N.W.2d 339.

There is sufficient evidence from which a jury of reasonable men could draw the inference that the damage to the plaintiffs' homes was caused by the vibrations set in motion by the use of the headache ball. We do not feel there is any other reasonably probable explanation. The evidence presented more than a mere possibility that the injury occurred in the manner alleged and we find the evidence is sufficient to sustain the verdict. The district court did not err in denying the motions for a directed verdict or dismissal of the action, and this applies also to the motion for judgment non obstante which is but a motion for delayed action on the motion for a directed verdict. Burt v. Lake Region Flying Service, supra; McLeod v. Simon, 51 N.D. 533, 200 N.W. 790.

Defendant also argued that a lay jury could not reasonably find the negligence alleged proximately caused the damages claimed because the conclusion to be drawn from the facts is not one within the common experience or knowledge of laymen and there is no expert testimony to aid them in reaching a right conclusion. We do not agree. The testimony of the superin-

tendent for the defendant, who was an engineer by profession, established the vibrations which he felt were caused by the use of the headache ball. The project engineer for the State highway department was also an engineer and linked the vibrations felt in the vicinity of the plaintiffs' homes with the use of the headache ball. Plaintiffs saw the headache ball used, heard the noise, felt the vibrations in their houses, heard the dishes rattle, observed the pictures turning on the wall, discovered sagging doors, cracks in the walls and stucco, and separation of steps from the house and foundation. This was ample proof of cause and effect plainly and easily understood by laymen without the assistance of expert testimony.

We shall next consider the defendant's claim that it was error for the court to have denied its motion for a new trial.

The first assignment of error refers to the trial court's denial of a motion to have the jury view the premises. The motion was made after all of the parties had rested and it was resisted by the plaintiffs. The alleged negligence which caused the damage occurred in May of 1959 and the trial was held in June of 1961, over two years later. The only evidence describing the damage was produced by the plaintiffs. The testimony relative to the amount of damages was uncontroverted. The defendant argues there was no showing that the premises were materially changed from the time of the alleged damage and the time of the trial. We find the record silent on this question and, therefore, there is no evidence to establish that there were no material changes. The matter is one largely within the discretion of the trial court. Section 28–14–15, NDCC; Chambers v. Minneapolis, St. P. & S. S. M. Ry. Co., 37 N.D. 377, 403, 163 N.W. 824. Considering the length of time that had elapsed before trial, the nature of the property damaged (to wit, occupied homes), the absence of evidence that there had been no material changes, the fact that the evidence as to

the damage and the amount thereof was uncontroverted in the record and that both sides had rested their case, we see no merit in the contention that the trial court abused its discretion in denying the motion. In view of the completeness of the record made at the trial describing the damages and the amount of the damages, all of which was described in detail, we see no good reason why it should be proper for the jurors to view the premises. We hold the trial court did not abuse its discretion and do not pass on whether or not the motion was timely.

Defendant also assigns as error the exclusion of testimony offered by the defendant as to the customary method used to break concrete pavement in and around Bismarck, North Dakota, on a highway project. The defendant in his answer pleaded affirmatively that the work was done according to the common usage in the business. The court excluded this evidence on objection. The witness called by the defendant to testify as to the custom and usage was its superintendent. He testified he was familiar with the customs and practice of the area in and around Bismarck where the breaking of concrete pavement was required but was not permitted to testify thereto.

Evidence of general custom or usage ordinarily is admissible on the issue of due care where the conditions subsisting at the time and place of the accident are similar to those to which such custom relates. 65 C.J.S. Negligence § 232; 38 Am.Jur., Negligence, Sec. 317; 137 A.L.R. 611; 8 A.L.R.2d 446.

The evidence would be admissible not for the purpose of establishing a set standard on the basis of which the conduct is to be held negligent or not negligent, but merely as evidence assisting the jurors to determine whether the conduct of the defendant was, in the particular situation, that of a reasonably prudent person. Miller v. Midway Fishing Tool Co., 106

Cal.App.2d 612, 235 P.2d 630; Schance v. H. O. Adams Tile Co., 131 Cal.App.2d 549, 280 P.2d 851; Johnson v. A. Schilling & Co., 170 Cal.App.2d 318, 339 P.2d 139; Hartmon v. National Heater Co., 240 Minn. 264, 60 N.W.2d 804; Notkin v. Brookdale Gardens, Inc., 28 N.J.Super. 9, 99 A.2d 825; Robertson v. Coca Cola Bottling Company of Walla Walla, Wash., 195 Or. 668, 247 P.2d 217.

There was no offer of proof but if we assume the witness would have testified that the customary method of breaking concrete pavement, in the area and under the particular circumstances and conditions existing on this project, was by the use of a headache ball, as employed by the defendant in this instance, we fail to see how its omission was prejudicial in this case.

On cross-examination of the defendant's witness, it developed that he supervised the work and directed and controlled the method employed in breaking the concrete pavement. Shortly after the work was commenced, he received complaint from the occupant of a home located between the homes of two of the plaintiffs, one house removed from the third plaintiff. The complaint he received was to the effect that the use of a headache ball was causing vibrations. He testified he and the project engineer of the State highway department went to the area where the homes of the plaintiffs were located and entered the home of the complainant while the work was in progress and conducted an investigation and that he felt "slight vibrations" but could not recall whether or not he saw or heard the sink rattle. The project engineer had previously testified that on this inspection trip he saw and heard the sink rattle in this home. The witness further testified he made no inspection of the other homes in the area. He admitted the vibrations or shocks which he felt while in the house were actually produced by the headache ball hitting the concrete pavement.

He testified he permitted the operation to continue.

Mr. Erling, who was vice president and director of the defendant company, testified on cross-examination that he received complaint from the same household and called the defendant's attorneys and "asked them to go out there and take a look at the houses and check on it." He also testified he received a second complaint from one of the plaintiffs in this action, but thought it may have been received after the work was completed. Both complaints were relative to vibrations. When asked whether or not the procedure was changed in any manner, he testified a request was made not to raise the headache ball over ten feet. There is no evidence establishing this request resulted in any change of procedure. The defendant's superintendent testified the maximum distance which the headache ball could be raised with the machine in use was between 15 and 20 feet, and that he had instructed the headache ball should not be raised over ten feet but he did not state when this instruction was given. He testified that dropping the headache ball from a height of ten feet woud break approximately 36 square feet of concrete. The evidence does not establish there was any change in procedure after the complaints and the record is devoid of any evidence of further investigation after the initial inspection was made by the superintendent. The work was permitted to continue to its completion using the headache ball. There is no evidence that the vibrations ceased or diminished. It is clear the defendant company was put on notice that the method employed to break up the old paved highway was causing vibrations in the vicinity of the plaintiffs' homes.

When the defendant received notice that its operations caused vibrations which could be felt in the area of the plaintiffs' homes, it had actual knowledge of a potential danger to the property of others.

It suggested investigation and inspection. The defendant must be held to the natural and probable consequences of its act, if it did not exercise its intelligence in its subsequent actions to avoid an injury to another. The foundation of liability for negligence is knowledge, or opportunity by the exercise of reasonable diligence to acquire knowledge, of the peril which subsequently results in injury or damage to another. 38 Am.Jur., Negligence, Sec. 24; 65 C.J.S. Negligence § 5.

The distinction was aptly expressed by Mr. Justice Holmes:

"What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not." Texas and Pacific Rwy. Co. v. Behymer, 189 U.S. 468, 470, 23 S.Ct. 622, 623, 47 L.Ed. 905.

The rule is well established that where, in making an improvement of any kind, it is manifest that injury is likely to result, unless due precautions are taken, a duty rests upon him who causes the work to be done to see that all necessary precautions are taken. Ruehl v. Lidgerwood Rural Telephone Co., 23 N.D. 6, 135 N.W. 793, L.R.A.1918C, 1063.

The belief of a person charged with negligence as to the existence or nonexistence of danger is not the test, but the true test is whether the circumstances were such that one of ordinary prudence would have appreciated that there was danger. Bostwick v. Minneapolis and Pacific Rwy. Co., 2 N.D. 440, 444, 51 N.W. 781.

The defendant's proffered evidence of custom and usage has no bearing on the question of prudence after notice was received that their operation was causing vibrations which could be felt in the area of the plaintiffs' homes.

An examination of the record discloses that the only evidence as to the quantum of damage consists of the testimony of the plaintiffs. Each testified as to the value of their respective homes before and after the damage. The difference in each case was the same amount as prayed for in the complaint. The jury awarded each plaintiff an amount less than that prayed for. By making a simple computation, it is obvious the jury allowed each plaintiff 60% of the amount of damages prayed for in the complaint. The only specific evidence contained in the record indicating when notice was given of the vibrations is found in the testimony of the project engineer of the State highway department. He testified that complaint of the vibrations was made when the work of breaking the concrete was less than one-half and more than one-fourth finished. From a consideration of the verdicts where the evidence of the amount of damages was uncontroverted, it is apparent the jury computed the allowable damages from some point after the work began.

We believe it is apparent that the amount of the verdicts found in favor of these plaintiffs is that portion (determined by the jury to be 60%) of the work done after notice. The seed for the application of this method may have been implanted in the jurors' minds by a statement made in their presence by counsel for the defendant as follows:

"If the Court please, may I interrupt for the purpose of making a statement? We have pleaded in our Answer that these people, that this job was done according to the ordinary and common practice of removing concrete, and I think it is important to show it. Certainly, if we used some unusual method of breaking concrete, we might have been guilty of negligence, we might have been the negligent party, but where we used an accepted common method, the engineer is qualified, and I think we should be able to show it."

We conclude that if the evidence of custom and usage had been admitted and the jury instructed thereon, it may have been justified in finding the defendant guilty of actionable negligence after the notice of vibrations was received in which event the verdicts do substantial justice. For these reasons we hold that the assigned error was not prejudicial. Iszler v. Jorda, N.D., 80 N.W.2d 665, 64 A.L.R.2d 696.

The judgment is affirmed.

SATHRE, C. J., and STRUTZ, BURKE and MORRIS, JJ., concur.